CABLE & COMPUTER TECHNOLOGY, INC.,

v.

LOCKHEED SAUNDERS, INC.

No. CV 97–5315–JMI (RCX).

United States District Court, C.D. California.

Oct. 22, 1997.

 

Jeffrey S. Davidson, Eric C. Liebeler, Viddell Lee Heard, Jr., Kirkland & Ellis, Los Angeles, CA, for Plaintiff.

Douglas A. Kuber, John B. Quinn, Quinn Emanuel Urquhart & Oliver, Los Angeles, CA, for Defendant.

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT LOCKHEED TO PRODUCE FACT WITNESSES FOR DEPOSITION; AND DEFENDANTS' MOTION TO COMPEL RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES

CHAPMAN, United States Magistrate Judge.

On September 2, 1997, plaintiff Cable & Computer Technology, Inc., filed an ex parte application for order shortening time for the Court to rule on plaintiff's motion to compel defendant Lockheed to produce fact witnesses for deposition, with supporting declaration of Eric C. Liebeler. On September 5, 1997, Magistrate Judge Rosalyn M. Chapman denied the ex parte application, and plaintiff filed a notice of motion and motion to compel defendant to produce fact witnesses with "joint stipulation." [1] On September 22, 1997, defendants filed a notice of motion and motion to compel responses to first set of special interrogatories, with joint stipulation and supporting exhibits.

The hearing was held before Judge Chapman on October 22, 1997. The plaintiff was represented by Jeffrey S. Davidson, attorney at law. The defendants were represented by Douglas A. Kuber, attorney at law.

### BACKGROUND

On June 19, 1997, plaintiff Cable & Computer Technology, Inc., a corporation, filed a complaint in the Superior Court for Orange County against defendants Lockheed Sand-

---

1. The plaintiff, on October 15, 1997, filed a withdrawal of its motion to compel defendant Lockheed to produce fact witnesses for depositions.

ers, Inc., et al., setting forth the following seven claims for relief: (1) breach of contract; (2) promissory estoppel; (3) fraud by intentional misrepresentation; (4) fraud by false promise; (5) intentional interference with prospective economic advantage; (6) violation of California's unfair business practices statutes, Business and Professions Code Section 17200 et seq.; and (7) violation of the Cartwright Act. The Superior Court action was removed to the United States District Court for the Central District of California on July 18, 1997, based on diversity jurisdiction. Common to all causes of action, plaintiff generally alleges that it is a California corporation that designs, manufactures, integrates, and tests systems and equipment to replace aging military and commercial hardware (Complaint, ¶ 1) and defendants are Maryland and Delaware corporations with businesses in aeronautics, electronics, information and technology services, materials or tactical systems. (Complaint, ¶¶ 2–4).

The plaintiff further alleges that the B–52 and B–1B aircrafts are a part of the United States strategic bomber fleet with a "mission computer" (AP–101) that controls various radar, navigation, and weapons-systems functions. In 1993, plaintiff and defendant Lockheed Saunders, Inc. ("Saunders") began a joint collaboration to design and upgrade the "mission computer" utilizing both companies' technology and expertise, and the joint project was known as the "split backplane" approach. (Complaint, ¶¶ 7–9). On July 26, 1993, plaintiff and Saunders entered into a written teaming agreement authorizing plaintiff to produce the working model of the upgraded mission computer, and the plaintiff and Saunders cooperated toward this end for a few years. (Complaint, ¶¶ 10–13). The teaming agreement expired in 1995; however after it expired, plaintiff and Saunders continued to jointly develop an upgrade to the mission computer. (Complaint, ¶¶ 14–17.) In September 1994, plaintiff, on behalf of its team, submitted to the Air Force an unsolicited proposal to upgrade the mission computer on the B–52 using the split backplane approach, and in February 1996, the Air Force awarded plaintiff the contract. (Complaint, ¶¶ 18–19).

In early 1996, Boeing won a contract to replace the mission computers in the B–1b bomber fleet. (Complaint, ¶¶ 20–21). In March 1996, Boeing requested plaintiff provide financial information to demonstrate its ability to lead an AP–101F upgrade team, and Saunders represented to plaintiff and Boeing that Saunders would be a subcontractor in plaintiff's bid for the upgrade contract. (Complaint, ¶¶ 22–23). In May 1996, Boeing requested plaintiff to prequalify to bid on the upgrade contract. (Complaint, ¶¶ 24–26). In July 1996, plaintiff sent its detailed submission to Boeing, which included substantial input from Saunders, whom plaintiff represented would provide the processor for the computer. (Complaint, ¶¶ 27–28). In August 1996, Boeing announced that plaintiff had successfully prequalified to bid on the AP–101F upgrade contract, as had six other potential bidders, including the team led by defendant Owego, which included another Lockheed subsidiary, Lockheed Martin Control Systems (Lockheed Systems). (Complaint, ¶ 28). On October 10, 1996, Boeing informed plaintiff and the other bidders that a formal request for proposals would be forthcoming with a formal bid deadline of November 11, 1996, and only those prequalified bidders were eligible to submit bids. (Complaint, ¶ 29). The plaintiff prequalified as the prime contractor, and relied on Saunders's representations that it was part of a team with plaintiff for the upgrade contract and, as a result, incurred substantial expenses. (Complaint, ¶¶ 29–36).

In April 1996, Lockheed acquired Owego and, sometime thereafter, representatives of Saunders, Owego, Lockheed Services, and perhaps Lockheed, met secretly and decided that Lockheed Services would drop out of the bidding as prime contractor on the AP–101FR contract and would team with Owego in its bid for the contract. (Complaint, ¶¶ 37–39). Saunders and Owego devised a scheme to eliminate plaintiff from the competition for the AP–101FR contract by, among other things, Saunders would delay signing a formal written team agreement with plaintiff and then, after it was too late for plaintiff to find another bidding partner, Saunders would withdraw from the team leaving plaintiff unable to submit any bid at all. (Com-

plaint, ¶¶ 40–43). In furtherance of the scheme, Saunders and its vice-president, Mr. Siddiqui, made misrepresentations to plaintiff and, at the last minute, refused to sign a teaming agreement and withdrew from its team with plaintiff. (Complaint, ¶¶ 44–60). The plaintiff informed Boeing of Saunders's decision to withdraw from the team and asked Boeing for additional time to find a substitute partner to replace Saunders; however, Boeing refused and advised plaintiff that Saunders had recently asked for permission to bid as a prime contractor on the AP–101FR contract. (Complaint, ¶¶ 61–62).

Owego submitted a timely bid for the AP–101FR upgrade contract and received the contract from Boeing in February 1997. (Complaint, ¶ 63). The plaintiff believes that the plaintiff/saunders's team bid price for the upgrade would have been less than Owego's bid and, if Saunders had not backed out of the team bid, Boeing would have awarded the contract to the plaintiff/saunders team. (Complaint, ¶¶ 63–64). The plaintiff has suffered damages in excess of $20 million as a result of Saunders's conduct, including $1.5 million in costs plaintiff incurred in developing and bidding on the upgrade contract, and $18.5 million in anticipated profits. (Complaint, ¶ 65).

In addition to the foregoing project, in September 1993, plaintiff and Saunders entered into a teaming agreement whereby they agreed to attempt to qualify Saunders as a prime contractor in the Advance Technology Support Program (ATSP), which allows the government to avoid the usual lengthy procurement process with respect to certain technological procurements. (Complaint, ¶¶ 66–68). Once the government awards the contract, the preapproved team bids for the contract, that is, proposes the price for which it would perform the work. *Id.* In February 1994, in anticipation that the government would accept Saunders as an ATSP prime contractor, plaintiff and Saunders entered into a subcontract relating to the ATSP teaming agreement. (Complaint, ¶ 68).

In July 1996, the Air Force identified a need to upgrade one of its radar simulators, which fell within the scope of the ATSP subcontract, and Saunders informed plaintiff of the existence of the radar simulator upgrade; however, Saunders began considering ways to award the work reserved to plaintiff to Lockheed-affiliated entities instead. (Complaint, ¶¶ 69–71). On August 30, 1996, Saunders submitted its bid for the radar simulator upgrade to the Air Force omitting any reference to plaintiff and instead representing that Saunders and Lockheed Systems would perform the tasks reserved for plaintiff. (Complaint, ¶ 74). Saunders informed plaintiff that the Air Force had decided not to award a contract under the radar simulator upgrade and concealed its actions in order to facilitate its scheme regarding the AP–101F upgrade contract. (Complaint, ¶ 75). As a result of the actions of Saunders and other defendants, plaintiff suffered damages in excess of $300,000.00 and costs incurred for preparing and bidding on the ATSP and radar simulator upgrade. (Complaint, ¶ 77).

## DISCUSSION

### I

■ Although plaintiff has withdrawn its motion to compel, this Court cannot overlook the irresponsible and frivolous conduct of plaintiff's counsel in filing that motion, first as an ex parte request to shorten time, and then without complying with either the meet and confer or joint stipulation requirements of Local Rule 7.15.1 and 7.15.2. As shown by the documents and declaration of plaintiff's counsel, Eric C. Liebeler, plaintiff's counsel, instead of complying with Local Rule 7.15, moved this Court for an ex parte order shortening time for the hearing on plaintiff's motion to compel based solely on his purported inability for unspecified "personal and professional reasons" to take the depositions between mid-September and late October. Liebeler Declaration, at ¶ 3. Further, the "joint stipulation" filed by plaintiff is not a "joint stipulation," at all; to the contrary, defendants' counsel wrote plaintiff's counsel that it was unable to provide defendants' portion of the "joint statement" within the time plaintiff's counsel demanded, and requested that plaintiff's counsel delay filing his documents until he could respond. The

parties are advised that even if plaintiff had not withdrawn its motion, this Court would not have considered it due to plaintiff's failure to comply with Local Rule 7.15. *See* Local Rule 7.5.

This Court hereby sanctions plaintiff's counsel in the amount of $500.00 for violating Local Rule 7.15. *Yusov v. Yusuf,* 892 F.2d 784, 787 (9th Cir.1989); Local Rule 7.15.4. Counsel is admonished that any noncompliance with the Court's orders, including the timely payment of sanctions, may result in further sanctions. *Telluride Management Solutions, Inc. v. Telluride Investment Group,* 55 F.3d 463 (9th Cir.1995).

## II

Rule 1 of the Federal Rules of Civil Procedure directs that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." "There probably is no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted..... The Supreme Court of the United States has stated that these rules 'are to be accorded a broad and liberal treatment.'" *Trevino v. Celanese Corp.,* 701 F.2d 397, 405 (5th Cir.1983) (citing *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947) and *Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964)).

■ Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions of "any matter, not privileged, which is relevant to the subject matter involved.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, the "information is 'relevant' if it relates to the claim or defense of the party seeking discovery or any other party, or to the credibility of any witness." Schwarzer, Tashima & Wagstaff, *California Practice Guide: Federal Civil Procedure Before Trial,* § 11.21 (1995 revised) (emphasis added).

■ Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial. *Jones v. Commander, Kansas Army Ammunitions Plant,* 147 F.R.D. 248, 250 (D.Kan.1993). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections. *Nestle Foods Corp. v. Aetna Casualty & Surety Co.,* 135 F.R.D. 101, 104 (D.N.J.1990).

■ Rule 33 of the Federal Rules of Civil Procedure provides for the serving by a party upon any other party of written interrogatories, not exceeding 25 in number including all discrete subparts, provided the interrogatories are served after the parties have met and conferred under Rule 26(f) or by local rule.[2] Rule 33(a). Rule 33(c) further provides that the interrogatories may relate to any matters which can be inquired into under Rule 26(b)(1) and that "[a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time." As it now stands, under Rule 33(c), "there is no longer any automatic rule that an interrogatory must be disallowed merely because it calls for an opinion or contentions." WRIGHT, MILLER & MARCUS, *Federal Practice and Procedure: Civil* § 2167 at 247 (2d ed.1994).

The defendants seek to compel responses to defendant Lockheed Martin Corp.'s (hereafter defendant Lockheed) First Set of Special Interrogatories, interrogatory nos. 1, 5

---

**2.** Here, the parties held their early meeting of counsel on August 14, 1997.

through 11, and 14 through 16.[3] The plaintiff has objected to all of these interrogatories on the grounds they are "contention interrogatories" and, therefore, improper, citing *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328, 345–49 (N.D.Cal.1985).

> "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends. Some people would define contention interrogatories as embracing only questions that ask another party whether it makes some specified contention.... Another kind of question ... asks an opposing party to state all the facts on which it bases some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to how the law applies to facts. A variation on this theme involves interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention." *Id.* at 332.

The Advisory Committee Notes to the 1970 amendment of Rule 33(b) (now Rule 33(c)), explain succinctly the reason for Rule 33(c), as it now reads:

> There are numerous and conflicting decisions on the question whether and to what extent interrogatories are limited to matters 'of fact,' or may elicit opinions, contentions, and legal conclusions. [¶] Rule 33 is amended to provide that an interrogatory is not objectionable merely because it calls for an opinion or contention that relates to fact or the application of law to fact. Efforts to draw sharp lines between facts and opinions have been invariably unsuccessful, and the clear trend of the cases is to permit 'factual' opinions....

(Citations omitted). Further, if the concern in answering a contention interrogatory before discovery has been completed, or even substantially done, is that the answer to the interrogatory may limit the party's proof at trial, that concern is misplaced in that, among other things, the trial court may permit the withdrawal or amendment of an answer to an interrogatory. WRIGHT, MILLER & MARCUS, *Federal Practice and Procedure: Civil* § 2181 at 344 (2d ed.1994); *see also* Advisory Committee Notes, 1970 Amendment Rule to Rule 33(b) (now Rule 33(c)) (stating "[t]he rule does not affect the power of a court to permit withdrawal or amendment of answers to interrogatories."). Additionally, Rule 26(e)(2) requires:

> A party who has made a disclosure under subdivision [26](a) or responded to a request for discovery with a disclosure or a response is under a duty to supplement or correct the disclosure or response including information thereafter acquired if ordered by the court or in the following circumstances:
>
> (1) * * * *
>
> (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

In *Convergent Technologies,* Judge Wayne D. Brazil, in a very thoughtful opinion, held that the 1983 amendments to Fed.R.Civ.P. 26(b) compelled his conclusion that the "wisest course is not to preclude entirely the early use of contention interrogatories, but to place a burden of justification on the party who seeks answers to these kinds of ques-

---

**3.** Interrogatory no. 1 asks plaintiff to describe "each component of damages YOU claim YOU have suffered as a result of the acts or omissions YOU allege in the Complaint, including, but not limited, stating the dollar amount of each, and how much was calculated."

Interrogatory nos. 5, 6, 7, 10, 11, 14, 15 and 16 ask plaintiff to state all facts upon which a particular, specified allegation in the Complaint is based.

Interrogatory nos. 8 and 9 ask plaintiff to identify documents, statements or actions specifically and particularly alleged in the Complaint.

tions before substantial documentary or testimonial discovery has been completed.... [T]he propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." 108 F.R.D. at 338–39. More recently, however, Judge Brazil has modified his position, noting that contention interrogatories may in certain cases be the most reliable and cost-effective discovery device, which would be less burdensome than depositions at which contention questions are propounded. See *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 287 (N.D.Cal. 1991) (holding appropriately framed and timed contention interrogatories rather than depositions in patent infringement action was most appropriate vehicle for establishing infringers' contentions).

■ Applying the foregoing principles, this Court prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment. Thus, although it is too early for plaintiff to provide expert opinions on the subject of damages, plaintiff may, at this time, answer interrogatory no. 1 based on the information it has to date. Of course, plaintiff may later amend its answer with leave of Court or supplement it, as it has an obligation to do under Fed.R.Civ.P. 26(e). The other disputed interrogatories, interrogatory nos. 5 through 11 and 14 through 16, are straightforward "factual" contention interrogatories which plaintiff should also be able to answer now. Requiring the answer to these "factual" contention interrogatories is "consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint...." *In re One Bancorp Securities Litigation*, 134 F.R.D. 4, 8 (D.Me.1991). Accordingly, plaintiffs "must answer [the] interrogatories with information as they now possess...." *Id.*

### III

The Court would like to take this opportunity to address the parties and their counsel, to stress, as Judge Brazil did, that "[t]he discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of Civil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests." *Convergent Technologies*, 108 F.R.D. at 331.

### ORDER

1. The plaintiff's counsel, Eric C. Liebeler, is hereby sanctioned $500.00 for not complying with Local Rule 7.15, and said sanctions shall be paid to the Clerk of Court within ten (10) days of the date of this Order.

2. The defendants' Motion to Compel Responses to Written Interrogatories is GRANTED. The plaintiff shall, within thirty (30) days of the date of this Order, provide responses to Special Interrogatory nos. 1, 5 through 11, and 14 through 16.

3. Nothing set forth herein shall affect any deadlines established by District Judge James M. Ideman.

4. The Clerk of Court shall serve this Order on the parties and the Court's Financial Officer.