Lawrence O'CONNOR, et al.

v.

**BOEING NORTH AMERICAN, INC., et al.**

**No. CV 97–1554–ABC(RCx).**

United States District Court,
C.D. California,
Los Angeles Division.

April 2, 1999.

Kim A. Seefeld, Troy A. Thielemann, Capello & McCann, Santa Barbara, CA, Tina B. Nieves, Hector G. Gancedo, Gancedo & Nieves, Pasadena, CA, for plaintiffs.

John A. Reding, William W. Schofield, Barry N. Endick, Peter C. Meier, Paul, Hastings, Janofsky & Walker, San Francisco, CA, for defendants.

**PROCEEDINGS: (1) PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES RE THE MANNER OF PRODUCTION OF DOCUMENTS AND FOR ATTORNEY'S FEES AND DEFENDANTS' REQUEST FOR ATTORNEY'S FEES; AND (2) DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

CHAPMAN, United States Magistrate Judge.

On March 5, 1999, plaintiffs filed a notice of motion and motion to compel further responses to interrogatories regarding the manner of production of documents and for attorney's fees, a joint stipulation, and plaintiffs' exhibits to joint stipulation, with supporting declaration of Kim A. Seefeld. The defendants filed the declaration of William Schofield in opposition to plaintiffs' motion to compel, with numerous supporting exhibits, and defendants' exhibits to joint discovery stipulation. On March 24, 1999, both parties filed supplemental memoranda in support of their positions.

On March 4, 1999, defendants filed a notice of motion and motion to compel answers to interrogatories and production of documents by plaintiffs, a joint stipulation, and the declaration of Barry N. Endick in support of defendants, motion.[1] The plaintiffs filed the declarations of William Thomas Nevin and Kim A. Seefeld in support of plaintiffs' opposition to defendants' motion to compel. On March 24, 1999, defendants filed a supplemental statement in support of their motion to compel.

Oral argument was heard before Magistrate Judge Rosalyn M. Chapman on March 31, 1999. Kim A. Seefeld, attorney at law, appeared on behalf of plaintiffs. William Schofield, attorney at law, appeared on behalf of defendants.

## BACKGROUND

On September 18, 1998, District Judge Audrey B. Collins certified this action as a class action, consisting of three classes: Class I, represented by Harold Samuels and Joyce Samuels ("the Samuels"); Class II, represented by Lawrence O'Connor and Margaret O'Connor ("the O'Connors"), William Rueger and Mary Jane Vroman;[2] and Class III, represented by Robert Grandinetti. Additionally, this action includes personal injury and wrongful death claims brought by 71 plaintiffs.

The Notice of Pendency of Class Action succinctly sets forth the nature of this action, and the Court, thus, liberally paraphrases and quotes therefrom without specific attribution. In the Fourth Amended Complaint ("FAC"), plaintiffs allege that, beginning in approximately 1946, the defendants researched, developed, manufactured and tested various missile and rocket engines, as well as propellants, lasers and nuclear reactors at four facilities located in the greater Simi Valley and San Fernando Valley. Those four facilities, referred to as the "Rocketdyne Facilities," were located at the following sites: The Santa Susana Field Laboratory ("SSFL") in Ventura County, the Canoga

---

1. The Court, unfortunately, finds the manner in which this joint stipulation is presented to be needlessly confusing and duplicative, and strongly suggests that any joint stipulation in the future be more like that presented to the Court regarding plaintiffs' dispute with the Regents of the University of California.

2. Donald Reed has been withdrawn as a Class II representative and remains solely as an individual personal injury plaintiff.

Facility at 6633 Canoga Avenue, the DeSoto Facility at 8900 DeSoto Avenue, and the Hughes Facility at 8433 Fallbrook Avenue.

The plaintiffs allege that the activities of the defendants at the Rocketdyne Facilities involved the use and release of certain chemicals, including, among others, trichloroethene (TCE) and hexavalent chromium, as well as the use, storage, generation and disposal of certain radioactive materials. The plaintiffs allege that they were personally exposed to and/or that their properties were contaminated by certain radioactive and/or chemical substances which were released from one or more of the Rocketdyne Facilities and which were dispersed through the contamination area by means of air currents, surface water runoff and/or subsurface ground water.

The plaintiffs further allege that their exposure to these substances has placed them at an increased risk of developing cancer or some other serious illness or disease. As a result, plaintiffs seek the implementation of a court-supervised program of medical monitoring designed to detect early signs of such illness or disease.

The plaintiffs also allege that the defendants' release of these substances has resulted in the contamination of their properties and has diminished the value of their properties, and they have incurred certain necessary expenses in response to the contamination of their properties for which they seek reimbursement under federal law.

The defendants maintain that plaintiffs have not been exposed to any substances released from the Rocketdyne Facilities that place them at an increased risk of illness or disease. The defendants also maintain that plaintiffs' properties are not contaminated by any releases from the Rocketdyne Facilities and that, consequently, plaintiffs are not entitled to recover damages for any harm caused to their properties.

3. These interrogatories generally seek information regarding the identities, quantities, and time periods of hazardous substances used and released at each of defendants' facilities, as well as the locations, dates and results of offsite testing of hazardous substances. Additionally, plaintiffs seek information identifying the locations, nature

The claims for relief asserted by the members of Class I include claims for public liability under the Price–Anderson Act, negligence, and strict liability. The members of Class I seek a declaratory judgment and mandatory injunctive relief in the form of a comprehensive court-supervised program of medical monitoring. The claims for relief asserted by the members of Class II include claims for public liability under the Price–Anderson Act, negligence, strict liability, trespass and nuisance. The members of Class II seek compensatory and punitive damages for contamination of their properties, loss of the use and enjoyment of their properties, diminution in the fair value of their properties, impairment of the saleability of their properties and stigmatization of their properties. The members of Class II also seek mandatory injunctive relief requiring defendants to clean up the contamination caused to their properties. The claims for relief asserted by members of Class III are brought under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and California Business and Professions Code ("B.P.C.") §§ 17200 et seq. The members of Class III seek to recover necessary "response costs" under CERCLA to clean up the contamination and injunctive relief under California law.

## DISCUSSION

### Plaintiffs' Motion to Compel

### I

The plaintiffs served interrogatory nos. 1 through 20 on defendants on November 11, 1997.[3] The defendants filed multiple objections, including relevancy and definitional objections to the interrogatories; however, without waiving their objections, defendants generally responded to the interrogatories under Rule 33(d), stating that the answers to these interrogatories may be derived or ascertained from defendants' business records previously produced to plaintiffs.[4] The plain-

of, and results from tests on substances in the surrounding area, groundwater, surface water, air, and soil.

4. The defendants have filed three sets of responses to plaintiffs, interrogatories: their original responses served on February 5, 1998; "Further

tiffs argue that defendants' responses are improper in that defendants have not complied with Rule 33(d), and, when answering narratively, have not completely and responsively answered.[5]

The defendants, during oral argument, acknowledged that their responses to interrogatory nos. 1 through 5 relied on Rule 33(d), but argued that their Further Supplemental Responses to interrogatory nos. 6 through 20 narratively answered plaintiffs' interrogatories, rather than answered under Rule 33(d). This is not completely true. Although defendants, in their supplemental responses to interrogatory nos. 6 through 17 and 19, do not specifically cite Rule 33(d), they implicate Rule 33(d) by referring plaintiffs to certain specified responsive documents. *See,* e.g., Jt.Stip. at 57:7–60:10. However, defendants have narratively answered interrogatory nos. 18 and 20, as discussed below.

The Court, prior to addressing plaintiffs' motion and its several issues, notes that due to the complex nature of the pending class action, written interrogatories to the defendants are not likely to be particularly helpful or useful to plaintiffs and, more likely than not, will only lead to unnecessary discovery disputes. *See,* e.g., *Independence Tube Corp. v. Copperweld Corp.,* 543 F.Supp. 706, 720 (N.D.Ill.1982) (the use of interrogatories by a discovering party may be quite limiting since such devices are "designed to identify dis-creet information or sources of information [and] not to elicit opinions on complex issues where the detailed cross examination allowed by deposition is imperative"). Rather, the depositions of knowledgeable corporate witnesses under Rule 30(b)(6), or the individually noticed depositions of defendants' employees, will ultimately be more productive.

■ The nature of the inquiries made by plaintiffs in their interrogatories was sufficiently broad for defendants to answer under Rule 33(d).[6] *See Sable v. Mead Johnson and Co.,* 110 F.R.D. 553, 556 (D.Mass.1986) (One "prerequisite for invoking the Rule 33[ (d) ] option is that there be a burden on the interrogated party if it were required to answer the interrogatories in the traditional manner."). However, Rule 33(d) is not satisfied by the wholesale dumping of documents. *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 452 (W.D.N.C. 1991). Rather, under Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories—not to avoid answering them. To answer an interrogatory, "a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Investment Corp.,* 711 F.2d 902, 906 (9th Cir.1983) (inter-

---

Responses" served on June 1, 1998; and "Supplemental Further Responses" served on December 22, 1998. Joint Stipulation ("Jt.Stip.") at 44:9–45:18.

**5.** The plaintiffs, in the joint stipulation, have characterized the instant dispute as raising five issues: (1) May defendants respond to interrogatories by referring to a few selected documents produced by them; (2) may defendants refuse to indicate where in the documents produced answers to the interrogatories may be found or must they provide substantive answers to the interrogatories; (3) must defendants provide plaintiffs with a locator and descriptive information to identify documents responsive to specific inquiries; (4) must defendants produce documents in any particular order when producing large volumes of documents; and (5) must a privilege log contain a description of withheld documents (including attachments), as well as the job titles of all authors and recipients sufficient to allow plaintiffs to contest claimed privileges. The Court, however, does not understand issue no. 4 or to what "order" the plaintiffs are alluding.

**6.** Federal Rule of Civil Procedure 33(d) provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ..., and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to **specify** the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts, or summaries. **A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.**

Fed.R.Civ.P. 33(d) (emphasis added).

nal quotation marks and citation omitted).[7] Thus, when voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories. *See, .e.g., State of Colorado v. Schmidt–Tiago Construction Co.,* 108 F.R.D. 731, 735 (D.Col.1985) ("The appropriate answer when documents are to be used [under Rule 33(d) ] is to list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory.").

Without detailed specification by category and location of responsive documents, the burden of deriving the answers to the interrogatories is not the same for the parties; rather, it would be easier for persons employed by the defendants to locate responsive documents. *See* Advisory Committee's Note to Fed.R.Civ.P. 33(c) [8] ("A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records."); *Sabel,* 110 F.R.D. at 556–557 (where company failed to adequately specify records containing requested information or provide adequate index, and where company's employees generated the documents and were responsible for maintaining them, "[i]t [was] simply absurd [for the company] to contend that it [was] equally burdensome for the plaintiff to derive [the requested] information"). Thus, defendants' responses to interrogatory nos. 1 through 17 and 19 do not comply with Rule 33(d) and adequately specify by category and location the business records containing the answers to the interrogatories, and plaintiffs' motion should be GRANTED as to these interrogatories.

Interrogatory no. 18 asks defendants to:

**IDENTIFY the date and location of your first discovery of CONTAMINATION in the SURROUNDING AREA.**

The defendants, in their Supplemental Further Responses to interrogatory no. 18, state that:

> BNA first became aware that releases from its SSFL operations in concentrations above normal background had migrated offsite in August or September 1991. Water from a monitoring well approximately one hundred feet north of SSFL on property then owned by the Brandeis–Bardin Institute measured above background for tritium, but below the drinking water standard.

■ The plaintiffs object that this response is inadequate under Rule 33(d) and that defendants have provided no information with regard to the Hughes, Canoga or DeSoto facilities. However, defendants have narratively answered the interrogatory, rather than rely on Rule 33(d). Additionally, interrogatory no. 18 only requests information regarding defendants' first discovery of contamination, not the first discovery of contamination in the surrounding areas of each of the Rocketdyne Facilities; thus, defendants answered the interrogatory.

Interrogatory no. 20 asks defendants to:

**IDENTIFY all allegations, reports, or claims of OFFSITE CONTAMINATION YOU have received.**

In their Supplemental Further Responses to interrogatory no. 20, defendants list sixteen lawsuits, including the instant action, and further responded that they "are not aware of specific complaints of contamination of offsite property other than these lawsuits." Jt. Stip. at 87:16–17.

■ The plaintiffs object that this response is inadequate under Rule 33(d), that defendants have provided no information regarding the Hughes, Canoga or DeSoto facilities, and that the response should also list informal complaints. Here again, defendants have narratively answered the interrogatory, rather than rely on Rule 33(d), and defen-

---

**7.** The defendants, in response to interrogatory nos. 1 through 5, responded that, because the volume of responsive documents is "huge, and listing all the responsive documents would be an overly burdensome endeavor," defendants have identified only a "representative sampling" of some of the documents containing responsive

information. Jt.Stip., at 45:9–14. Such a response clearly shows lack of compliance with Rule 33(d).

**8.** Former subsection (c) of Fed.R.Civ.P. 33 was redesignated as subsection (d) in 1993.

dants have answered the interrogatory, albeit not to plaintiffs' satisfaction.

For the foregoing reasons, the Court finds that defendants have not complied with Rule 33(d) in responding to interrogatory nos. 1 through 17 and 19, and plaintiffs' motion to compel further responses to those interrogatories is GRANTED. The Court also finds that defendants' responses to interrogatory nos. 1 through 17 and 19 were not substantially justified. Since the Court has found that, in light of the nature of the interrogatories, defendants could have chosen to respond under Rule 33(d), the defendants, at their option, will be afforded one last opportunity to respond under Rule 33(d), **provided** they comply with all of the Court's requirements and limitations set forth herein and in Parts II and V. The plaintiffs' motion to compel further answers to interrogatory nos. 18 and 20 is DENIED.

## II

■ The Court would like to take this opportunity to provide guidance to the parties regarding the use of Rule 33(d), so that, when properly used, both sides will be able to easily find for trial the documents produced during discovery.[9] For trial purposes, it is best to have all documents placed on CD–ROM, which affords a method by which the storage of voluminous documents is less burdensome to the parties. This is not possible, however, without two things: One, a general index describing by topic and subtop-

ic the information in the documents and, two, a locator index identifying the location of each document on CD–ROM. Since the Fourth Amended Complaint spans five decades, the descriptive index should also provide the decade (date) in which the document was created.[10] Because both the descriptive and locator indices must meet the needs of both sides, the Court believes the parties should jointly create these indices. Thus, the parties must meet and confer regarding the indices, and such meeting or meetings shall take place no later than fourteen (14) days from the date of this Order.

■ Under Rule 33(d), certain documents which would otherwise be responsive may be withheld based on privilege, **provided** the exercise of the privilege does not prevent the interrogating party from ascertaining or deriving complete answers to the interrogatories and the withheld documents are listed on a privilege log. *Ampex Corp. v. Mitsubishi Elec. Corp.*, 937 F.Supp. 352, 355 (D.Del. 1996).[11] For purposes of this action, when defendants choose to answer an interrogatory under Rule 33(d), they may claim only the attorney-client privilege and work product doctrine and they must set forth the purportedly privileged documents on a privilege log. Other privileges, such as the patient-physician privilege and third party privacy rights, are not to be claimed on the privilege log; rather, the protective order, coupled with the redaction of selected information (when nec-

9. In the Court's opinion, this guidance should also be useful to the parties in assuring that documents produced under Rule 34 will be easily accessible for trial.

10. The period covered by the FAC should be divided into five decades: 1945–55, 1955–65, 1965–75, 1975–85, and 1985–current.

11. Other courts have found that when a party elects to produce business records under Fed. R.Civ.P. 33(d), it waives its right to withhold privileged documents. *See Blake and Assoc., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 290 (D.Mass.1988) ("It does not take a great deal of cognitive thinking to realize that it is improper to invoke Rule 33[ (d) ] in answer to interrogatories and then claim that some or all of the documents containing the information are privileged and not subject to disclosure. If a party is going to invoke Rule 33 [ (d) ], the party must be prepared to allow inspection of the documents which con-

tain the answers to the interrogatories. If a party is going to claim a privilege with respect to documents, the party cannot use Rule 33 [ (d) ]; rather, the party must answer the interrogatory in the traditional manner."). This Court opines that the Ampex approach is preferable, and notes that there are no comments in the Advisory Committee Notes to Rule 33(d) which would show any intention to require a party choosing to use Rule 33(d) to waive any applicable privileges, provided the interrogatory is answered. *See Ampex*, 937 F.Supp. at 355 ("It is not correct, therefore, to say that a party cannot elect the option to produce documents under Rule 33(d) and at the same time withhold documents as privileged. It would be more accurate to say that a party cannot elect the option under Rule 33(d) to produce documents and then withhold as privileged documents so as to prevent a party from ascertaining or deriving the answer.").

essary), is sufficient to safeguard the interests protected by such privileges and rights. By these limitations, defendants' claims of privilege should not prevent the plaintiffs from ascertaining the complete answers to the interrogatories that are the subject of the pending motion, thereby permitting defendants to answer the interrogatories under Rule 33(d).[12]

■ As to documents subject to the attorney-client privilege or work product doctrine, the plaintiffs are correct in contending that not all attachments to, or enclosures with, such documents are necessarily protected by the privilege. *See Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 511 (D.N.H.1996) (" 'Attachments which do not, by their content, fall within the realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney.' ") (quoting *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. 1, 4 (N.D.Ill.1980)); *Leonen v. Johns–Manville,* 135 F.R.D. 94, 98 (D.N.J.1990) ("Where a privileged document has attachments, each attachment must individually satisfy the criteria for falling within the [attorney-client] privilege. Merely attaching something to a privileged document will not, by itself, make the attachment privileged."). Rather, to claim the attorney-client privilege or work product doctrine for an attachment to, or enclosure with, another privileged document, the attachment or enclosure must be listed as a separate document on the privilege log; otherwise, such attachment or enclosure must be disclosed.

The Court finds that Model Form 11:A, set forth in The Rutter Group Practice Guide, *Federal Civil Procedure Before Trial,* correctly and adequately lists all the information that should be set forth on the privilege log, including the title or position of the author and recipient of the document.[13] *See and In re Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.1992); *Dole v. Milonas,* 889 F.2d

885, 888 n. 3 (9th Cir.1989). In addition to the information on Model Form 11:A, the Court will require that the Bates number of the document be placed in parenthesis next to the log number. This should assist a party in determining whether a document has been withheld without proper reason.

## III

■ Both sides seek attorney's fees under Rule 37(a)(4) regarding plaintiffs' motion to compel. Rule 37(a)(4) provides, in part, that when a discovery motion is granted or denied, the winning party may recover its "reasonable expenses" unless the Court finds, among other things, that the losing party's position "was substantially justified," or "that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4)(A), (B). Under Rule 37(a)(4)(A), the Court may deny an attorney's fees request when it finds that the winning party, if the movant, has failed to make a "good faith effort to obtain disclosure or discovery without court action." Fed.R.Civ.P. 37(a)(4)(A).

The Court DENIES WITHOUT PREJUDICE plaintiffs' motion for sanctions since, as discussed in Part V below, defendants were still in the process of supplementing their answers to the interrogatories when plaintiffs filed the pending motion. Since the denial is without prejudice, if defendants do not comply with this Order and fully answer the outstanding interrogatories, the plaintiffs may renew their motion for sanctions. Further, the defendants' request for attorney's fees is DENIED in that plaintiffs' motion is not frivolous.

### Defendants' Motion to Compel

#### IV

■ · Rule 33(c) of the Federal Rules of Civil Procedure provides, in part, for the serving of an interrogatory the answer to which involves "an opinion or contention that relates to fact or the application of law to

---

12. This may not be true, however, with responses to other interrogatories where the claims of privilege, even with the limitations set by the Court, would prevent plaintiffs from ascertaining the answers to the interrogatories.

13. Despite arguing that it is a burden to provide this information, the defendants have not shown by declaration or other evidence that it would, in fact, impose a burden on them to identify the title or position of the author and recipient of a document listed on the privilege log.

fact...." Fed.R.Civ.P. 33(c).[14] Here, defendants seek to compel responses to several interrogatories that are essentially contention interrogatories. Such interrogatories are permissible and acceptable under Rule 33(c). *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D.Cal.1997); *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D.Kan.1991). Moreover, requiring the answer to these contention interrogatories is "[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint...." *In re One Bancorp Securities Litigation*, 134 F.R.D. 4, 8 (D.Me.1991).

The defendants served the following interrogatory (which the Court will call interrogatory no. 1) on Class I representatives, the Samuels, Class II representatives, the O'Connors, Rueger, and Vroman, and Class III representative, Grandinetti:

> **DESCRIBE FULLY EACH ALLEGED EXPOSURE TO YOU TO ALLEGED TOXIC SUBSTANCES WHICH YOU CONTEND WAS CAUSED BY DEFENDANTS' CONDUCT.**

Class I representatives initially objected to the interrogatory as being compound, and then answered that they "may have been exposed" through ingestion of airborne releases, soil and surface water contamination. Jt.Stip. at 14:7–15, 28. Finally, the Samuels stated that "the amount of toxic substances to which [plaintiff] has been exposed is unknown." *Id.* The response was supplemented by the Samuels stating, upon information and belief, that additional information regarding their exposure may be determined from documents produced by defendants and these documents show, among other things, that toxic substances have traveled through the air, water or soil in patterns causing them to come in contact with plaintiffs. Jt. Stip. at 17:4–20:11.[15]

■ The defendants argue that these responses are "evasive or incomplete" and should, thus, be treated as a failure to respond. There is no merit to defendants' argument. The plaintiffs' response to interrogatory no. 1 is sufficient since the clear inference from the response is that plaintiffs do not yet know exactly how they were exposed to contaminants, but exposure occurred. When additional information is known to plaintiffs, they must supplement their response under Rule 26(e). Thus, defendants' motion regarding interrogatory no. 1 is DENIED as to the Class I representatives.

■ Class II and Class III representatives objected to interrogatory no. 1 on the grounds of relevancy, claiming the discovery seeks information not within the scope of these plaintiffs' class representation, which plaintiffs assert is limited to property damage issues only. Despite their objections, the Class II and Class III representatives have answered that they lived in close proximity to the Rocketdyne Facilities and were exposed to various releases of hazardous and radioactive substances into the environment and into the air, soil, and ground water. They then named the various chemicals to which they were exposed, but stated that they could not state with specificity the exact amount of hazardous substances to which they were exposed. The plaintiffs also contend that they are unable to respond completely to interrogatory no. 1 because they have not yet fully reviewed documents produced by defendants and, thus, are continuing to gather information.

14. "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends.... Another kind of question ... asks an opposing party to state all the facts on which it bases some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to how the law applies to facts. A variation on this theme involves interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332 (N.D.Cal.1985).

15. Class III representative Grandinetti also served on defendants a supplemental response similar to that of the Samuels.

The defendants argue that although the O'Connors, Rueger and Vroman are Class II representatives, the Class II claims for continuing private nuisance, permanent private nuisance, and continuing public nuisance, specifically at FAC, ¶¶ 293 and 314, allege that due to the continuing nuisances stemming from defendants' activities, Class II members have been personally exposed to hazardous substances and such exposure has interfered with the quiet enjoyment of their lives and properties. Thus, defendants argue, Class II representatives cannot claim interrogatory no. 1 seeks irrelevant information.

The plaintiffs, in response, acknowledge that Class II representatives, Lawrence O'Connor and Rueger, and Class III representative Grandinetti also "have asserted personal injury claims in this action." Jt. Stip., at 11:4–6.[16] However, they argue that Judge Collins' case management order no. 1, dated September 17, 1998, provides that discovery in the first phase shall address solely the development of facts relevant to the statute of limitations defense and should not address the merits of individual personal injury claims. Thus, plaintiffs argue that any discovery regarding claims stemming from personal exposure to toxic substances should be addressed solely to the Class I representatives, the Samuels.

There is no merit to the Class II representatives' objection to interrogatory no. 1. The case management order is broad enough to permit discovery of the Class II representatives' private and public nuisance claims by seeking information regarding how the defendants' conduct has exposed Class II representatives to hazardous substances and interfered with the quiet enjoyment of their lives and properties. Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions of "any matter, not privileged, which is relevant to the subject matter involved.... The information sought need not be admissible at the trial if the information

sought appears reasonably calculated to lead to the discovery of admissible evidence." Interrogatory no. 1 is reasonably calculated to lead to the discovery of admissible evidence.

None of defendants' arguments, however, address the relevancy objection of Class III representative Grandinetti, and he is correct in objecting to the interrogatory. Interrogatory no. 1 is not reasonably calculated to lead to the discovery of admissible evidence from him. Thus, defendants' motion to compel further responses to interrogatory no. 1 is GRANTED as to the Class II representatives and DENIED as to the Class III representative.

The defendants served the following interrogatory (which the Court will call interrogatory no. 2) on Class I representatives, the Samuels, Class II representatives, the O'Connors, Rueger, and Vroman, and Class III representative Grandinetti:

**For each of YOUR properties allegedly contaminated by DEFENDANTS' conduct, DESCRIBE FULLY THE NATURE AND SCOPE OF THE ALLEGED CONTAMINATION BY TOXIC SUBSTANCES caused by DEFENDANTS' conduct.**

All class representatives initially objected to the form of the interrogatory and then answered, stating that their residency is within proximity of one of defendants' facilities and providing general information regarding the use of certain chemicals at the facility. The class representatives also filed a supplemental response identifying specific chemicals and noting that documents produced by defendants show the release of these chemicals into the environment.[17] Finally, plaintiffs argue that they were in the process of further supplementing their responses based upon the documentary evidence provided to them, and defendants knew that these responses would be available by March 15, 1999.

The defendants complain that plaintiffs' responses are inadequate in that they

---

16. *See,* for example, the eighth claim for relief wherein plaintiffs Lawrence O'Connor, Rueger and Grandinetti sue defendants for negligence per se. FAC, ¶¶ 236–244:

17. The plaintiffs responded, in part, that "[b]ased upon presently known information, [plaintiffs] believe[ ] [plaintiffs'] propert[ies] ha[ve] been contaminated by at least radiation, TCE, and hexavalent chromium emissions from Defendants' ... properties." Jt.Stip. at 25:25–26:2.

do not identify the substances that could actually be found on plaintiffs' properties, and, further, complain that since some plaintiffs want reimbursement for cleaning up their property they surely must know of the contamination to it. There is no merit to defendants' argument since interrogatory no. 2 does not specifically ask the plaintiffs to identify the toxic substances found on the plaintiffs' properties, nor does the defendants' definition of the phrase "DESCRIBE FULLY THE NATURE AND SCOPE OF THE ALLEGED CONTAMINATION BY TOXIC SUBSTANCES" ask the plaintiffs to identify such substances. Thus, defendants' motion to compel further responses to interrogatory no. 2 is DENIED.

The defendants served the following request for production of documents (which the Court will call request no. 1) on Class II representatives, O'Connors, Rueger and Vroman, and Class III representative Gradinetti:

> **All DOCUMENTS that describe, set forth or refer to the amount of each toxic substance to which PLAINTIFF claims exposure or the time or location of each exposure.**

The Class II and Class III representatives objected to request no. 1 on relevancy grounds, again claiming to be class representatives solely regarding property damage claims.

The defendants argue that request no. 1 is relevant to Class II plaintiffs' exposure to hazardous substances and the interference with plaintiffs' quiet enjoyment of their lives and properties as set forth in the private and public nuisance claims. Once again, no argument is made regarding the relevancy of request no. 1 to the claims of Class III representative Grandinetti. Thus, for the reasons discussed above regarding interrogatory no. 1, defendants' motion to compel further production of documents responsive to request no. 1 is GRANTED as to the Class II representatives and DENIED as to the Class III representative.

The defendants have served the following request for production of documents

no. 2 on Class I representatives, the Samuels:

> **All DOCUMENTS that describe, set forth or refer to the degree of claimed contamination of each of PLAINTIFF'S property or properties allegedly caused by DEFENDANTS' conduct.**

The Samuels objected on the grounds of relevancy, claiming to be Class I representatives only regarding medical monitoring claims. The Samuels, as Class I representatives, have not made any claims regarding contamination of their property. The defendants' response to plaintiffs' relevancy objection is attenuated, at best. Thus, defendants' motion to compel further production of documents responsive to request no. 2 is DENIED.

The defendants also served the following request for production of documents no. 3 on Class I representatives, the Samuels:

> **All DOCUMENTS consisting [of] medical records that refer or relate to YOU, including but not limited to, DOCUMENTS that demonstrate bills or expenses incurred for any medical services provided to YOU, x-rays or other diagnostic tests, routine physical examinations and any therapy or treatment received by YOU for any illness.**

The Samuels objected on relevancy grounds, claiming that Mr. Samuels [sic] is not alleging a claim for personal injury.[18]

The defendants argue that the medical records of Class I representatives, the Samuels, are relevant to their claims for medical monitoring since the Samuels' medical conditions are risk factors other than the exposure to defendants' chemicals which may affect the Samuels' claims. The defendants are correct under Rule 26(b) since the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Thus, defendants' motion to compel further production of documents responsive to request no. 3 is GRANTED.

## V

The Court understands that the parties are concerned about obtaining certain

---

18. It is unclear to the Court whether the Samuels' objection to request no. 3 was withdrawn.

information prior to the filing of potentially dispositive motions on the statute of limitations issue. However, that concern does not fully explain the parties' unwillingness to amicably resolve issues without turning to the Court for its assistance. It is improper and undesirable to have discovery motions brought while the parties continue to file supplemental responses to disputed discovery matters. It is further improper and undesirable for the parties to set forth in their joint stipulation issues that have already been resolved.

To prevent the waste of the Court's time in the future, the Court intends to impose certain conditions on the parties. First, each side shall, within the next fourteen (14) days, identify to the Court one attorney who will be primarily responsible for discovery, and that attorney must make himself or herself available at all times to review discovery decisions by the other attorneys and to **personally** meet and confer with the opposing discovery attorney to resolve any discovery dispute, within 72 hours of a dispute arising. Second, each side shall, within the next fourteen (14) days, submit to the Court for its consideration and adoption a discovery plan containing suggestions about ways in which the discovery process may proceed more smoothly, efficiently and economically. Third, commencing May 3, 1999, and continuing on the first Monday of each month thereafter, until discovery is completed, the sides shall submit to the Court a joint status report specifying the discovery conducted, including the making of supplemental answers and document productions, during the past thirty (30) days, or a declaration signed by both discovery attorneys that there is nothing to report.

▇ The Court would like to take this opportunity to address the parties and their counsel, to stress that

[t]he discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of [c]iv-

il adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.

*In re Convergent Technologies Securities Litigation*, 108 F.R.D. at 331.

## ORDER

1. The plaintiffs' motion to compel further responses to interrogatory nos. 1 through 17 and 19 is GRANTED, and defendants shall file supplemental answers to those interrogatories within forty-five (45) days of the date of this Order, or alternatively, defendants may elect to answer the interrogatories under Rule 33(d), provided defendants comply with all of the requirements set forth in Parts I, II and V; however, plaintiffs' motion to compel further responses to interrogatory nos. 18 and 20 is DENIED.

2. The plaintiffs' motion for attorney's fees is DENIED WITHOUT PREJUDICE. The defendants' request for attorney's fees is DENIED.

3. The defendants' motion to compel further responses to certain interrogatories and requests for production of documents is GRANTED, in part, and DENIED, in part, as set forth in Part IV. The answers to the interrogatories and the responsive documents are due from plaintiffs no later than thirty (30) days from the date of this Order.

4. Within fourteen (14) days of the date of this Order, each side shall select its discovery attorney and shall submit a discovery plan to Judge Chapman, as discussed in Part V. The discovery attorneys shall, starting May 3, 1999, submit joint month status reports to Judge Chapman advising of all discovery, including the making of supplemental responses and productions, occurring during the previous thirty (30) days, as set forth in Part V.

5. The Clerk of Court shall serve this Order on the parties.