UNITED STATES of America,
Plaintiff,

v.

James M. BOYCE, Jr., a.k.a. James M. Boyce et al., Defendants.

No. 99CV0003–L (POR).

United States District Court,
S.D. California.

Feb. 15, 2001.

Order Amending Opinion April 27, 2001.

Henry C. Darmstadter, U.S. Department of Justice, Tax Division, Washington, DC, for U.S.

Larry G. Lushanko, Law Offices of Larry G. Lushanko, Bonsall, CA, Richard Shepard, Shepard Law Office, Inc., Tacoma, WA, for James M. Boyce, Jr., Shelley A. Boyce.

Leslie Branman Smith, State of California, Office of the Attorney General, San Diego, CA, for Franchise Tax Bd. of State of California.

**ORDER: (1) GRANTING THE GOVERNMENT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND ENTRY OF JUDGMENT ON THIRD CAUSE OF ACTION; (2) DENYING THE BOYCES' MOTIONS FOR SUMMARY JUDGMENT AND QUIET TITLE, TO AMEND THE ANSWER, TO STRIKE EXHIBITS AND REOPEN DISCOVERY; AND (3) GRANTING THE BOYCES' EX PARTE APPLICATION**

LORENZ, District Judge.

This matter came on regularly for a hearing on the: (1) Government's renewed motion for partial summary judgment; (2) Government's motion for default judgment and judgment by stipulation on its third cause of action for foreclosure of federal tax liens; (3) Defendants' James M. Boyce, Jr. a.k.a. James M. Boyce ("James Boyce") and Shelley A. Boyce ("Shelley Boyce") (collectively referred to as "the Boyces") motion for summary judgment and quiet title; and (4) the Boyces' motion to amend the answer. Henry C. Darmstadter, of the U.S. Department of Justice Tax Division appeared for Plaintiff United States, and Richard Shepard of the Shepard Law Offices appeared for Defendants.

## *FACTUAL BACKGROUND*

### I. Facts Relevant to the Tax Assessments.

For the years 1979 to 1981, James Boyce and Shelley Boyce filed Forms 1040 that purported to be joint federal income tax returns as husband and wife, but did not disclose any financial information. (Darmstadter (12/23/99) Decl. Exhs. A, B, C.) [1] Instead, the Boyces wrote "none" or "object" in all the appropriate lines. *Id.* Also, for the years 1982 to 1984, the Boyces failed to file any federal tax returns. (Darmstadter (12/23/99) Decl. Exhs. M, N. P.)

The Internal Revenue Service ("IRS") issued Notices of Jeopardy Assessments and Rights of Appeal to the Boyces on January 19, 1989 regarding jeopardy assessments made against them for income taxes for the years 1979 to 1984. (Darmstadter (12/23/99) Decl. Exhs. F, G.) The IRS also issued Statutory Notices of Deficiency on March 17, 1989, regarding income tax deficiencies for the years 1979 to 1984. (Darmstadter (12/23/99) Decl. Exhs. D, E.) In the Statutory Notices of Deficiency, the IRS determined separate deficiencies and additions in the following amounts:

James M. Boyce

| Year | Deficiency | Section 6653(b) | Section 6661(a) | Section 6654(a) |
|------|-----------|-----------------|-----------------|-----------------|

1. In support of its first motion for partial summary judgment filed on December 23, 1999, the Government submitted Exhibits "A" through "Q" attached to the Declaration of Henry C. Darmstadter. The Government has incorporated by reference those exhibits, and has also submitted additional exhibits attached to the June 16, 2000 Declaration of Henry C. Darmstadter in support of this renewed motion for partial summary judgment that commence with exhibit letter "R."

| | | | | |
|---|---|---|---|---|
| 1979 | $ 3,947 | $1,974 | –0– | –0– |
| 1980 | $ 4,887 | $2,444 | –0– | $311 |
| 1981 | $12,705 | $6,353 | –0– | $973 |

| Year | Deficiency | Section 6653(b)(1) | Section 6653(b)(2) | Section 6661(a) | Section 6654(a) |
|---|---|---|---|---|---|
| 1982 | $15,471 | $7,736 | * | $3,868 | $1,506 |
| 1983 | $14,854 | $7,427 | ** | $3,714 | $ 908 |
| 1984 | $14,491 | $7,246 | *** | $3,623 | $ 912 |

\* 50% of the interest due on $15,471

\*\* 50% of the interest due on $14,854

\*\*\* 50% of the interest due on $14,491

(Darmstadter (12/23/99) Decl. Exhs. D, I at 3.)

### Shelley A. Boyce

| Year | Deficiency | Section 6653(b) | Section 6661(a) | Section 6654(a) |
|---|---|---|---|---|
| 1979 | $ 2,052 | $1,046 | –0– | –0– |
| 1980 | $ 2,785 | $1,395 | –0– | $178 |
| 1981 | $ 9,943 | $4,972 | –0– | · $762 |

| Year | Deficiency | Section 6653(b)(1) | Section 6653(b)(2) | Section 6661(a) | Section 6654(a) |
|---|---|---|---|---|---|
| 1982 | $12,442 | $6,221 | * | $3,111 | $1,211 |
| 1983 | $11,516 | $5,728 | ** | $2,879 | $ 705 |
| 1984 | $10,220 | $5,110 | *** | $2,555 | $ 643 |

\* 50% of the interest due on $12,442

\*\* 50% of the interest due on $11,516

\*\*\* 50% of the interest due on $10,220

(Darmstadter (12/23/99) Decl. Exhs. E, I at 3–4.)

On April 10, 1989, the Boyces jointly petitioned the United States Tax Court (the "Tax Court") for a redetermination of the IRS's income tax deficiencies against them for the years 1979 to 1984 based on various constitutional and jurisdictional challenges. (Darmstadter (12/23/99) Decl. Exh. H.) When the IRS filed a motion for summary judgment, the Boyces failed to file any objections to the pending motion on the merits. (*See* Darmstadter (12/23/99) Decl. Exh. I at 3.) After review-ing the evidence presented, the Tax Court issued a Memorandum Opinion (T.C. Memo 1990–658) "sustaining [the IRS's] determinations contained in the notices of deficiency, including the additions to tax for fraud" and held that the IRS was entitled to summary adjudication on the merits of the case as a matter of law. (Darmstadter (12/23/99) Decl. Exh. I at 17.) On January 4, 1991, the Tax Court issued an "Order and Decision" ordering that the Boyces' deficiencies in, and additions to, their federal income tax are as follows:

### James M. Boyce

| Year | Deficiency | Section 6653(b) | Section 6661(a) | Section 6654(a) |
|------|-----------|-----------------|-----------------|-----------------|
| 1979 | $ 3,947 | $1,974 | –0– | –0– |
| 1980 | $ 4,887 | $2,444 | –0– | $311 |
| 1981 | $12,705 | $6,353 | –0– | $973 |

| Year | Deficiency | Section 6653(b)(1) | Section 6653(b)(2) | Section 6661(a) | Section 6654(a) |
|------|-----------|--------------------|--------------------|-----------------|-----------------|
| 1982 | $15,471 | $7,736 | * | $3,868 | $1,506 |
| 1983 | $14,854 | $7,427 | ** | $3,714 | $ 908 |
| 1984 | $14,491 | $7,246 | *** | $3,623 | $ 912 |

\* 50% of the interest due on $15,471

\*\* 50% of the interest due on $14,854

\*\*\* 50% of the interest due on $14,491

(*See* Darmstadter (12/23/99) Decl. Exh. J at 2.)

### Shelley A. Boyce

| Year | Deficiency | Section 6653(b) | Section 6661(a) | Section 6654(a) |
|------|-----------|-----------------|-----------------|-----------------|
| 1979 | $ 2,092 | $1,046 | –0– | –0– |
| 1980 | $ 2,789 | $1,395 | –0– | $178 |
| 1981 | $ 9,943 | $4,972 | –0– | $762 |

| Year | Deficiency | Section 6653(b)(1) | Section 6653(b)(2) | Section 6661(a) | Section 6654(a) |
|------|-----------|--------------------|--------------------|-----------------|-----------------|
| 1982 | $12,442 | $6,221 | * | $3,111 | $1,211 |
| 1983 | $11,516 | $5,728 | ** | $2,879 | $ 705 |
| 1984 | $10,220 | $5,110 | *** | $2,555 | $ 643 |

\* 50% of the interest due on $12,442

\*\* 50% of the interest due on $11,516

\*\*\* 50% of the interest due on $10,220

*Id.* at 3. The Tax Court also assessed a $5,000 penalty against each of the Boyces under 26 U.S.C. § 6673 for instituting the Tax Court proceeding for frivolous or groundless reasons or to cause delay. *Id.*

The Boyces appealed the Tax Court's decision to the United States Court of Appeals for the Ninth Circuit. (Darmstadter (12/23/99) Decl. Exh. Q.) The Ninth Circuit issued an unpublished Memorandum Decision on February 19, 1992, affirming the Tax Court's decision. *Id.* The Ninth Circuit stated that in their appeal the Boyces did "not challenge the merits of the deficiencies, additions, or penalties" but rather contended that: (1) the Tax Court failed to follow the Administrative Procedures Act; (2) the district counsel was required to sign the notice of deficiency; (3) the notices of deficiency were invalid because no returns were filed; (4) they were denied discovery; (5) and they were denied due process. *Id.* at 2. The Court rejected each of the Boyces arguments, and imposed a $1,500 sanction against the Boyces for bringing a frivolous appeal. *Id.* at 2–4.

Over seven years later and several months after this action was filed, on October 20, 1999, the IRS recalculated deficiencies against the Boyces for the years 1979 to 1984 in Official Certificates of Assess-

ments and Payments (hereinafter referred to interchangeably as "Forms 4340" and "Certificates"). (Darmstadter (12/23/99) Decl. Exhs. K–P.) The IRS Forms 4340 incorporate the additions for fraud and penalties per the Tax Court's Order and Decision, and credit partial abatements to Shelley Boyce's jeopardy assessments for the years 1980 to 1984. (*See* Maloney Decl. ¶¶ 5–19.)

## II. Facts Relevant to the Foreclosure of Federal Tax Liens on the Subject Property.

In 1972, the Boyces purchased real property located at 577 Sleeping Indian Road in San Luis Rey, California ("the Property"). (James Boyce Depo. at 33:23–34:18; Boyces' Depo. Exh.[2] A.) James Boyce's parents were added to the title to aid with securing financing on the purchase. (James Boyce Depo. at 40:5–14.) James Boyce's parents transferred their interest in the Property to James and Shelley Boyce by quitclaim deed in December 1975. (James Boyce Depo. at 43:12–44:1; Boyces' Depo. Exh. B.) From 1975 to the present, the Boyces have continuously resided on the Property. (James Boyce Depo. at 7:7–22; Shelley Boyce Depo. at 6:9–15.)

In March 1985, the Boyces created Defendant Jacob Family Preservation Trust, a.k.a, the Jacob Family Trust ("the Trust") for estate planning and asset management purposes. (James Boyce Depo. at 50:5–51:4; Boyces' Depo. Exh. F.) Under the terms of the Trust, James Boyce acted as the trustor, and Shelley Boyce and Defendant Rob Tanner, a friend and neighbor, acted as trustees. (Boyces' Depo. Exh. F.) The Boyces and their two children were designated as the original beneficiaries. *Id.* To effect transfer of the Property to the Trust, on January 23, 1985, and then

on March 8, 1985, Shelley Boyce deeded her interest in the Property by quitclaim deed to James Boyce. (James Boyce Depo. at 47:14–17; Boyces' Depo. Exhs. C, D.) Then by grant deed dated March 29, 1985, James Boyce transferred the Property to the Trust. (Boyces' Depo. Exh. E.) Subsequently, on September 4, 1985, the Trust, through its trustees, transferred the Property to Defendant White Rail Company ("White Rail") by grant deed. (Boyces' Depo. Exh. G.) White Rail was created by the Nassau Life Insurance Company, Ltd., at James Boyce's request and is classified as a "common law contractual business trust organization" and domiciled in Grand Turk, Turks and Caicos Islands, British West Indies. (James Boyce Depo. at 74:3–76:9; Boyces' Depo. Exh. H.) At the time White Rail was created, James Boyce was its president, and Shelley Boyce its secretary. (Boyces' Depo. Exh. H at 19.) The Boyces later became trustees of White Rail. *Id.* at 26, 27. In consideration for their interest in White Rail, the Boyces agreed to transfer almost all their personal and real property into White Rail. (James Boyces Depo. at 88:24–89:11; Boyces' Depo. Exh. H at 20, 21, 43–46.)

In August 1985, Nassau Life resigned as trustee of White Rail, and in September, 1985, the Boyces resigned as trustees of White Rail and were replaced by Rob Tanner and Mary Rombotis, James Boyce's sister. (Boyces' Depo. Exh. H at 27–36.) In October 1985, the Boyces were appointed managing directors for White Rail. (Boyces' Depo. Exh. H at 37–39.) In December 1988, Rob Tanner and Mary Rombotis resigned as trustees for White Rail and were replaced by Roman Pina of Lancaster Enterprises and Robin Welsh of New Mexico Frontier. (Boyces' Depo. Exh. H at 51–53.) In February 1998, both

---

**2.** Exhibits to both James Boyce's and Shelley Boyce's depositions were compiled together; accordingly, the Court refers to these Exhibits as "Boyces' Depo. Exh. ___".

Roma Pina of Lancaster Enterprises and Robin Welsh of New Mexico Frontier resigned as trustees of White Rail. (Boyces' Depo. Exh. H at 67–68.) The Government currently does not know who is the current trustee(s) of White Rail.

In March 1986, the Boyces opened a corporate checking account under the name "White Rail Company" at the Vista Branch of Southwest Bank. (Boyces' Depo. Exh. M.) The Boyces are authorized signatories on the account and have used the account to pay expenses associated with the Property. (Boyces' Depo. Exhs. M, N.) In March 1986 Shelley Boyce also opened a private mail box account for White Rail with A–1 Service Stop in Vista, California. (Boyces' Depo. Exh. O.) Also that month, White Rail granted the San Diego Gas & Electric company an easement on the Property that was signed by both James and Shelley Boyce. (Boyces' Depo. Exh. P.) The Boyces do not pay rent to White Rail, but have paid all expenses associated with the Property, including maintenance, utilities, insurance, and property tax. (James Boyce Depo. 92:15–94:5.)

On October 23, 1987, the Boyces created another trust organization, Defendant Northern Plains Service. (James Boyce Depo. at 107:4–108:2; Boyces' Depo. Exh. J.) The original trustees for Northern Plains Service were Rob Tanner and Mary Rombotis, while the Boyces acted as its Managing Directors. (Boyces' Depo. Exh. J at 10, 14.) Also, the Boyces as Exchangers obtained the beneficial interest in Northern Plains Service in consideration for $10 and a second deed of trust on the Property. (Boyces' Depo. Exh. J at 9–10, 34–35.)

On October 23, 1987—the same day Northern Plains Service was created— Northern Plains Service' trustees authorized a loan to White Rail in the amount of $350,000, payable in ten annual installments. (Boyces' Depo. Exh. J at 29.) On the same day, White Rail's trustees executed a note secured by deed of trust in the amount of $350,000, payable in twenty annual installments in the amount of $43,352.00. (Boyces' Depo. Exh. J at 36.) On December 15, 1987, the trustee for White Rail executed a deed of trust for the benefit of Northern Plains Service to secure the note. (Boyces' Depo. Exh. I.) The Government contends there is no evidence of Northern Plains Service ever providing any monies to White Rail, nor is there any evidence of White Rail making any payments to Northern Plains Service in accordance with the note. The Government also contends there is no evidence that Northern Plains Service has ever had sufficient assets to make a $350,000 loan. At their depositions, the Boyces testified they did not recollect whether any monies were actually loaned from Northern Plains Service to White Rail, or whether any payments were made by White Rail on any loans. (James Boyce Depo. at 116:13–21; Shelley Boyce Depo. at 58:9–59:2.)

## PROCEDURAL BACKGROUND

On January 7, 1999, the Government brought this action against the Boyces, and individuals and entities associated with the Property. The Government alleges the Trust, White Rail White Rail, and Northern Plains Service are the alter egos, nominees, or agents of the Boyces and may claim an interest in the Property. (Complaint ¶¶ 7, 8, 9.) Defendant Rob Tanner is sued as trustee of the Trust and White Rail. (Complaint ¶ 10.) The Government has sued Defendant Land Title Insurance Company and the State of California Franchise Tax Board because they may claim an interest in the Property. (Complaint ¶¶ 11, 12.) The first cause of action is to reduce the IRS's tax assessments against James Boyce. to judgment in the amount of $290,761.96 (excluding accrued interest). (Complaint ¶¶ 14–17.)

The second cause of action is to reduce the IRS's tax assessments against Shelley Boyce to judgment in the amount of $227,249.98 (excluding accrued interest). (Complaint ¶¶ 18–21.) The third claim alleges the conveyances and transfers of the Property were fraudulent and made without fair consideration, and that the Trust, White Rail, and Northern Plains Service are shams controlled by the Boyces, or alternatively, are the Boyces' nominees, alter egos, or agents. (Complaint ¶¶ 22–46.) That cause of action seeks to set aside the conveyances and foreclose on federal tax liens on the Property. *Id.*

White Rail responded to the Complaint with a motion to dismiss for failure to state a claim. By order dated April 9, 1999, the Honorable Irma E. Gonzalez denied the motion. The Government and White Rail subsequently entered into a stipulation approved by the Court that provides that the federal tax liens on the property are superior to and take priority over any interest White Rail holds on the Property. (Plt's Mot. for Default Judg't and Foreclosure Exh. 1.) The stipulation and order also provides that the Property can be sold with the proceeds of the sale first used to satisfy the federal tax liabilities of the Boyces. *Id.*

The Boyces filed an answer to the Complaint on January 26, 1999. Defendant State of California Franchise Tax Board filed an answer to the Complaint on February 23, 1999. Defendants Northern Plains Service and the Trust were served by publication following unsuccessful attempts at personal service. (Plt's Mot. for Default Judg't and Foreclosure Exh. 2.)

The Trust and Northern Plains Service did not respond to the Complaint and upon Plaintiff's request, the Clerk of the Court entered default against them on July 6, 1999. Defendants Rob Tanner and Land Title Insurance Company were not served. In a brief in response to the Court's order to show cause hearing to dismiss for want of prosecution, the Government consented to dismissing those two Defendants without prejudice.

On December 23, 1999, the Government filed a motion for partial summary judgment on the first and second causes of action to reduce to judgment tax assessments against the Boyces. In this motion, the Government raised two issues: (1) whether the Tax Court's ruling on the Boyces' income tax liabilities for the years 1979–84 is *res judicata* on the amount of those liabilities; and (2) whether the Boyces could present any evidence to overcome the presumption of correctness afforded the IRS Forms 4340[3] submitted for the subject liabilities. The Boyces defended against this motion in part by asking for a continuance and additional discovery, and arguing that the Forms 4340 do not accurately reflect monies the Boyces paid the IRS. According to the Boyces, the IRS has recovered nearly $85,000.00 from them but the IRS Forms 4340 reflect the Boyces have paid only $39,409.02. The Government subsequently represented to the Court both orally and in writing that it would withdraw its alternative argument that the Certificates are presumptively valid.

---

3. Forms 4340 are derived from coded information in the taxpayer's IMF contained in the IRS's computer system. *Rossi v. United States,* 755 F.Supp. 314, 316 n. 4 (D.Or.1990). An IMF, or individual master file, is the file maintained by the IRS that includes transactions on an individual's tax accounts, including Forms 1040 and related documents.

Robert Sellers Smith, *West's Tax Law Dictionary* at 450 (West 2000). The individual master file is written in coded form, and a code book referred to as the "ADP" is used to decipher the code. *United States v. Buford,* 889 F.2d 1406, 1407 (5th Cir.1989); Maloney Decl. ¶ 2.

By order dated March 22, 2000, Judge Gonzalez granted the Government's motion for partial summary judgment on its first and second claims, holding that the Tax Court's 1990 Order and Decision that held that the IRS correctly calculated the tax deficiencies against the Boyces in its Statutory Notices of Deficiency, is *res judicata* regarding the tax deficiencies assessed against the Boyces. Based on the Government's withdrawal of its argument regarding the validity of the Forms 4340, the Court denied the Government's motion for partial summary judgment on that issue as moot and without prejudice to the issue being raised by either party after additional discovery was conducted. Judge Gonzalez also denied the Boyces' motion to continue. In the order Judge Gonzalez expressly noted that the remaining issues between the parties are: (1) the assessments levied and credited by the IRS; (2) the validity of the IRS Forms 4340; and (3) the Government's third cause of action for relief from fraudulent conveyances.

The Boyces moved for clarification and reconsideration of Judge Gonzalez's order. By order dated May 18, 2000, Judge Gonzalez granted the Boyces' motion for clarification and amended her earlier summary judgment order. The Court denied the Boyces' motion for reconsideration of her order. The Boyces subsequently filed a motion to amend their answer. Judge Gonzalez granted that motion by order file-stamped on July 20, 2000, and directed the Clerk of the Court to file the Boyces' proposed amended answer.

### DISCUSSION

Presently before the Court are: (1) the Government's renewed motion for partial summary judgment on the issue of the validity of the IRS Forms 4340; (2) Gov-

ernment's motion for default judgment and judgment by stipulation on its third cause of action for foreclosure of federal tax liens; (3) the Boyces' motion for summary judgment and quiet title; and (4) the Boyces' motion to amend the answer. The Court will discuss each of these motions, including the parties' motions relating to evidentiary matters, below.

## I. The Boyces' Motion to Amend.

The Boyces' have filed a motion seeking leave to file a second amended answer to add a counterclaim for quiet title relief. The Boyces argue they should be granted leave to amend in light of the liberal standard of Federal Rule of Civil Procedure 15(a)[4]. They further state that they filed their original answer while they were *pro se*, and that the Court has allowed them to amend their answer once. The Boyces also contend the quiet title claim does not add any new questions to this case as the Government is seeking to foreclose on the Property and thereby has made title to any property in which the Boyces have an interest at issue in its own request for relief. Thus, the Boyces contend, the Government cannot claim prejudice nor surprise by the quiet title claim.

Caselaw developed under Rule 15(a) states that in deciding a motion to amend under that rule, the Court considers four factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing parties; and (4) futility. *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). In this case, the Honorable Louisa S. Porter issued a scheduling order that in relevant part set a cutoff date of September 24, 1999, to file motions to amend the pleadings. Under these circumstances, the Boyces must first make a showing of

---

4. Unless otherwise noted, all future citations to "Rule" shall refer to the Federal Rules of Civil Procedure.

good faith under Rule 16(b) before the Court analyzes the motion under Rule 15(a). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir.1992); *Deghand v. Wal–Mart Stores, Inc.*, 904 F.Supp. 1218, 1221 (D.Kan.1995) ("Because the plaintiff sought leave to amend her complaint after the deadline established in the pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure is the plaintiff's first hurdle."). " 'If [the court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.' " *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D.Cal.1999) (*quoting Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998)).

> Rule 16(b) provides in pertinent part:
> [The district court] ... shall ... after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, ... enter a scheduling order that limits the time
> (1) to join other parties and to amend the pleadings;
> (2) to file motions; and
> (3) to complete discovery.
> ... A schedule *shall not be modified except upon a showing of good cause* and by leave of the district judge or, when authorized by local rule, by a magistrate judge.

Fed.R.Civ.P. 16(b) (emphasis added). Unlike Rule 15(a)'s analysis that focuses on the requesting party's bad faith and prejudice to the opposing party, Rule 16(b)'s "good cause" inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* The Court may allow a post-deadline amendment if the deadline could not reasonably have been met despite the diligence of the moving party. *Id.*

To demonstrate diligence, the moving party may be required to show: (1) that it was diligent in assisting the Court in creating a workable Rule 16 scheduling order; (2) that its noncompliance with the scheduling order's deadline occurred or will occur notwithstanding diligent efforts to comply because of "the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference;" and (3) that it was diligent in seeking amendment of the scheduling order once it became apparent it could not comply with the order. *Jackson*, 186 F.R.D. at 608. Finally, the Ninth Circuit has stated that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

Because the Boyces seek to amend their answer to assert a counterclaim for quiet title, another rule of procedure implicated by this motion is Rule 13(f). Under this rule, a pleader that fails to plead a counterclaim "through oversight, inadvertence, or excusable neglect, or when justice so requires," may seek leave of court to set up the counterclaim by amendment. Fed. R.Civ.P. 13(f). In assessing these factors, the Court considers the good faith of the claimant, the extent of the delay, and any danger of prejudice to the opposing party. *Pioneer Invest. Serv. Co. v. Brunswick Assocs., Ltd.*, 507 U.S. 380, 392 n. 10, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

As discussed above, both Rules 16(b) and 13(f) require the moving party to show good faith for the delay in seeking amendment. The Boyces' briefs, however, fail to make this requisite showing. That the Boyces were defending this action in *pro*

*se* when they filed their original answer is not persuasive. As recently as July 2000, the Boyces moved for and were granted leave to amend their answer. Their briefs are devoid of any explanation as to why the quiet title counterclaim could not have been brought at that time. Accordingly, the Court finds that the Boyces have failed to make the requisite showing under Rules 16(b) and 13(f) of good faith, and for this reason, their motion should be denied.

■ Moreover, the Court finds that amendment to add a quiet title counterclaim against the government would be futile. The Boyces' quiet title claim is based on their argument that the statute of limitations has passed for collection of certain debts alleged by the Government. As the Government has persuasively argued in its opposition to this motion and in opposition to the Boyces' motion for partial summary judgment, the statute of limitations on collection has not expired. In support of their argument, the Boyces cite IRC § 6502. That section provides a 10-year statute of limitations for the *collection* of assessed taxes:

> [w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>
> (1) within 10 years after the assessment of the tax, . . . .

IRC § 6502(a). The Boyces state that their individual master file ("IMF") shows assessment statute expiration dates that are all more than ten years before the date this action was filed.

But the Boyces' argument is unpersuasive. First, the Boyces fail to present any authority that the statute of limitations for assessment and collection is set by the IMFs. Rather, as pointed out by the Government, the applicable statutes of limita-

tions are from the Internal Revenue Code. The statute of limitations for the assessment of taxes is provided by IRC § 6501, which imposes a three-year statute of limitations from the date the return is filed. IRC § 6501(a). Where a taxpayer files a false return, fails to file a return, or willfully attempts to evade tax, a tax may be assessed at any time. IRC § 6501(c). Here, the 1040 Forms the Boyces filed for 1979, 1980, and 1981 do not constitute "returns" because by stating "object" in responding to questions relating to income, the 1040 Forms do not contain sufficient information from which the Boyces' tax liability could be calculated. *See Bufferd v. Commissioner*, 506 U.S. 523, 528, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993) (noting that "tax returns that lack the data necessary for the computation and assessment of deficiencies generally should not be regarded as triggering the period of assessment.") (internal quotations omitted); *United States v. Kimball*, 925 F.2d 356, 357–58 (9th Cir.1991) (en banc) (holding that a 1040 Form containing only asterisks did not constitute a "return"); *c.f. Hess v. United States*, 785 F.Supp. 137, 138–39 (E.D.Wash.1991) (finding that a Form 1040 containing "-0-" in all critical lines and asking for a refund of the amount withheld constituted a "return," and that a 1040 Form that stated "Fifth Amendment" for gross income did not constitute a "return."). In 1982, 1983, and 1984 the Boyces simply failed to file returns. Accordingly, because the Boyces' did not file proper returns, the statute of limitations under IRC § 6501 did not begin to run against the Government to make an assessment. Here, the earliest jeopardy assessment was made on January 19, 1989. (Darmstadter (12/23/99) Decl. Exhs. F, G.) Because this action was commenced on January 7, 1999, it was brought within the applicable collection statute of limitations

with respect to all the subject assessments for tax and other additions.

Accordingly, for the foregoing reasons, the Boyces' motion to file an amended answer [Docket Nos. 126, 127] is DE-NIED.

## II. Legal Standard for Summary Judgment

Rule 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989). Rather, "the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan,* 497 U.S. at 885, 110 S.Ct. 3177 (*quoting Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

In contrast, when the moving party bears the burden of proof at trial, it cannot obtain summary judgment unless it presents evidence so compelling that no rational jury would fail to award judgment for the moving party. *See, e.g., Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35 (1st Cir.1998). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Id.* at 256, 106 S.Ct. 2505. Genuine factual issues must exist that "can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. *Id.* The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### III. The Parties' Summary Judgment Motions and Evidentiary Motions.

Judge Gonzalez's prior ruling—that the Tax Court's decision holding that the IRS correctly calculated the tax deficiencies against the Boyces in its Statutory Notices of Deficiency is *res judicata* in this action—is the law of the case and not subject to further dispute. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that once a court decides upon a rule of law, that decision continues to govern the same issues in subsequent stages in the litigation); *Hegler v. Borg,* 50 F.3d 1472, 1475 (9th Cir.1995) (holding that although the law of the case is discretionary, a court's prior decisions should be followed unless the decision is clearly erroneous or would work a manifest injustice). Accordingly, the crux of the parties' dispute in the summary judgment motions is the amount of money the IRS can collect on the subject liabilities. Briefly, the Government maintains that it has presented evidence—the Forms 4340—that establish: the subject liabilities were assessed (under IRC §§ 6201–03); that notice and demand for payment of the taxes was properly made (under IRC §§ 6303(a) and 6321); and that the Boyces are presumptively liable for the unpaid taxes, penalties, and interest as shown on those Certificates. The Boyces do not deny a tax liability in some amount. But instead they contend the Forms 4340 are suspect and are inadmissible, that these Certificates do not accurately reflect all credits made towards their tax liability, that the Government has not properly shown what interest is due, and that the they should not be subject to penalties and interest because they were validly exercising their Constitutional rights.

### A. Whether the Forms 4340 Accurately Reflect the Boyces' Tax Liabilities.

The Government bears the initial burden in an action to collect taxes and can satisfy that burden by introducing into evidence a properly certified tax assessment. *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Oliver v. United States,* 921 F.2d 916, 919 (9th Cir.1990); *Hauf v. IRS,* 968 F.Supp. 78, 82 (N.D.N.Y.1997). "Once introduced, the tax assessment is accorded a presumption of correctness" and the taxpayer bears the burden of showing with contrary evidence that the IRS incorrectly calculated the tax deficiencies. *I & O Publ'g Co. v. Commissioner,* 131 F.3d 1314, 1317 (9th Cir.1997); *Oliver,* 921 F.2d at 919; *Hauf,* 968 F.Supp. at 82. Certificates are sufficient in the absence of contrary evidence to establish that assessments were properly made and to establish the adequacy and propriety of notices of intent to levy. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993); *Hughes v. United States,* 953 F.2d 531, 535, 540 (9th Cir.1992); *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.1984); *Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992)

In support for its original and renewed motions for partial summary judgment, the Government submitted certified copies of Forms 4340 for James and Shelley Boyce for the tax years 1979 to 1984. (*See* Darmstadter (12/23/99) Decl. Exhs. K–P.) These Certificates establish that James Boyce has been assessed $290,761.96 (excluding interest) in unpaid taxes and penalties, and Shelley Boyce has been assessed $227,249.98 (excluding interest) in unpaid taxes and penalties. This evidence discharges the Government's initial burden. The Boyces, therefore, have the burden of showing with contrary evidence that the amounts calculated in these Certificates are incorrect. As discussed below, they cannot make this showing.

*1. Admissibility of the Forms 4340.*

█ The Boyces first argue that the Certificates on which the Government relies do not have proper foundation and have filed a motion to strike them from evidence. (*See* Defendants' Motion to Strike Exhibits K through P to the Declaration of Henry Darmstadter.) In support, the Boyces first argue that the Government has failed to establish the Certificates' authenticity because they state that the signature of "Jim Grimes" is "required for certification" but "E.M. Washington" has signed instead. The Boyces state that nothing presented by the Government shows that E.M. Washington has replaced Jim Grimes or has the authority to sign the Certificates that are in the record. The Boyces also argue that the Certificates themselves contain no declaration under penalty of perjury or testimony under oath. The Government responds that this argument is frivolous. The Court agrees.

The IRS used a Form 2866, entitled "Certificate of Official Record" to certify the authenticity of each Form 4340 that has been submitted into evidence. (Darmstadter (12/23/99) Decl. Exhs. K–P.) The individual who authenticated these forms—Washington—was delegated the authority to authenticate the Certificates. (Darmstadter (6/16/00) Decl. Exh. U.) Moreover, the Forms 4340 are admissible because fall within the public records exception to the hearsay rule, Federal Rule of Evidence 803(8). *Hughes*, 953 F.2d at 539–40; *Farr v. United States*, 990 F.2d 451, 454 (9th Cir.1993). These forms are also self-authenticating public documents under Federal Rule of Evidence 902(1) because they are certified under seal. *See Hughes*, 953 F.2d at 539–40. The Ninth Circuit has approved the use of the Form 2866, and has also held that IRS Forms 4340 are admissible even though they are a computer-generated document prepared exclusively for litigation purposes. *Hansen*, 7 F.3d at 138; *Hughes*, 953 F.2d at 539–40. This Court may therefore consider the Forms 4340 notwithstanding the Boyces' challenge to their certification. *See Laughlin v. United States*, 1999 WL 1022185 (S.D.Cal.1999), (denying plaintiff's motion to strike Forms 4340 on the grounds the Certificates were authenticated by an authorized individual and are admissible under Federal Rule of Evidence 803(8)), *aff'd*, 2000 WL 1843337 (9th Cir.2000).

*2. Conformity of the October 1999 Certificates to a February 15, 1991, Certificate.*

The Certificates the Government has relied on its original and instant motions for partial summary judgment are dated October 20, 1999. In discovery, the Government provided the Boyces a Certificate dated February 15, 1991.[5] The Boyces contend the 1991 Certificate differs from

---

**5.** The Boyces submitted a copy of this February 15, 1999, Certificate as Exhibit F to their Statement of Material Facts in Opposition to the Government's original motion for partial summary judgment.

the October, 1999 Certificates. In support, the Boyces have attached as Exhibit 26 a table showing selected entries on the October Certificates that do not appear on the 1991 Certificate even though those entries allegedly pre-date February 15, 1991. (Shepard (8/14/00) Decl. Exh. 26.) According to the Boyces, the fact these entries do not appear on the February 15, 1991 Certificate, the October Certificates are not complete and accurate.

As an initial matter, the Court notes that while the Boyces' counsel has submitted a declaration explaining what Exhibit 26 is, that declaration does not properly authenticate the exhibit as required by Federal Rules of Evidence 901.[6] More importantly, as the Government points out, the discrepancies between the October 1999 Certificates and the February 15, 1991 Certificate is primarily due to the fact that a Form 4340 only includes assessments actually made by the IRS. *Ghandour v. United States*, 37 Fed. Cl. 121, 125–26 (Fed.Cl.), *aff'd*, 132 F.3d 52, 1997 WL 716143 (Fed.Cir.1997). Indeed, the Certificates themselves read that they are "a true and complete transcript for the periods stated, of all assessments, penalties, interests, abatements, credits, refunds, and advance or unidentified payments relating thereto as disclosed by the records of this office *as of the date of this certification*." (Darmstadter (12/23/99) Decl. Exhs. K at 5, L at 5, M at 4, N at 5, O at 4, P at 10) (emphasis added). Contrary to the Boyces' arguments, almost all of the entries the Boyces challenge were not assessed until *after* February 15, 1991. This is evidenced by the assessment dates for the entries, which are in the far right-hand corner of the Certificates. (*See* Darmstadter (12/23/99) Decl. Exhs. K–P.) All of the entries for penalties and interest that appear on James Boyce's October Certificates for the period ending 12/31/79, 12/31/80 and 12/31/81, and 12/31/83 and 12/31/84 and that the Boyces challenge were assessed on June 3, 1991. (*See* Darmstadter (12/23/00) Decl. Exhs. K at 4, L at 4, N at 3–5.) Similarly, the entry for $8,258.63 on James Boyce's October Certificate for the period ending 12/31/82 that the Boyces challenge was also assessed on June 3, 1991. (*See* Darmstadter (12/23/00) Decl. Exh. M at 3.) Because these challenged assessments were not made until almost four months later, they did not appear on the February 15, 1991 Certificate. Accordingly, the Boyces' reference to these interest and penalty assessments fails to impugn the accuracy of the Forms 4340 before the Court.

The final two entries the Boyces challenge—the $24.00 miscellaneous penalty and $5.00 estimated tax penalty on the October Certificate for the period ending 12/31/82—were assessed prior to February 15, 1991. (*See* Darmstadter (12/23/00) Decl. Exh. M at 3.) Nevertheless, they can be explained by simply comparing the October Certificates with the February 15, 1991, certificate. On the February 15, 1991, Certificate, the miscellaneous penalty received and assessed on 01/19/89 is $3,892.00. (Boyces' (01/26/00) Statement of Material Facts Exh. F.) On the October 1999 Certificate, the miscellaneous penalty assessed on 01/19/89 is put into two entries for the same date; one is $3,868.00, and the second is the challenged entry of

---

**6.** The Court notes that the Boyces have filed an *ex parte* application to file Second Declaration of James M. Boyce and Shelley A. Boyce *nunc pro tunc* to September 18, 2000. This declaration was inadvertently omitted from the Boyces' reply brief papers filed on September 18, 2000. (Shepard (12/11/00) Decl. at 1.) Having reviewed the *ex parte* application and good cause appearing, the application is hereby GRANTED.

The Boyces' Second Declaration also does not authenticate Exhibit 26. Indeed, it states that exhibit was prepared by counsel. (Second James and Shelley Boyce Decl. ¶ 3.)

$24.00. (Darmstadter (12/23/00) Decl. Exh. M at 3.) Adding the two sums equals $3,892.00—the miscellaneous penalty noted on the February 15, 1991, Certificate. Similarly, the February 15, 1991 Certificate assessed an estimated tax penalty of $1,511.00. (Boyces' (01/26/00) Statement of Material Facts Exh. F.) The October 1999 Certificate divides the estimated tax penalty into two entries; one for $1,506.00 and the other, challenged entry for $5.00. (*See* Darmstadter (12/23/00) Decl. Exh. M at 3.) Adding the two sums equals $1,511.00, the estimated tax penalty noted on the February 15, 1991, Certificate.

In short, having reviewed the Boyces' Exhibit 26, the February 15, 1991, Certificate, and the October 1999 Certificates, the Court finds there are no discrepancies as the Boyces have alleged, and therefore this argument fails to show there is a triable issue of material fact as to the accuracy of the October Certificates.

*3. Conformity of the Certificates to the Tax Court Judgment and IMF Files.*

The Boyces concede that the Certificates agree with the Tax Court judgment as it relates to the tax owed and estimated tax penalties, but in all other respects, such as the "fraud penalties," the Boyces contend the Certificates reveal internal discrepancies with the Tax Court decision and with the IMF transcripts provided by the Government. IRS employee James Maloney testified that the Certificates are prepared from information contained in the IMFs. (Maloney Depo. at 12:21–24.) The Boyces argue that the IMFs, not the Certificates, are therefore the "official record" of a taxpayer's account. The Boyces have attached an exhibit that compares the penalty and interest entries on the IMFs and the Certificates. (Shepard (8/14/00) Decl. Exh. 24.) The Boyces state their Exhibit 24 shows that the Certificates reflect penalties and interest claimed against the Boyces, and not shown on the IMFs, in

the amount of $539,125.88. Because the IMF is the "official record" of a taxpayer's account, the Boyces argue it should be given greater weight than a Certificate. In their opposition to the Government's motion for partial summary judgment and in their own motion for partial summary judgment, the Boyces did not present any facts or detailed arguments to support their position the Certificates do not comport with the Tax Court Judgment. But in their reply for their summary judgment motion, the Boyces list various purported discrepancies they contend exist between the Tax Court judgment and the Certificates.

Having carefully reviewed the evidence, the Court finds the Boyces's arguments that the Certificates do not conform to the Tax Court judgment and the IMFs fail to raise a triable issue of material fact regarding whether the Forms 4340 are accurate. As an initial matter, as with their Exhibit 26, the Boyces' Exhibit 24 has not been properly authenticated as required by Federal Rule of Evidence 901. The Boyces appear to suggest it is not necessary that the exhibit be authenticated because that exhibit was prepared by Defense counsel and his investigator by copying selected information from the Certificates and IMFs. (Boyces' Reply at 9 n.17.) Thus, the Boyces' contend, the exhibit does not offer any new evidence. (Second James and Shelley Boyce Decl. ¶ 12.) The Boyces, however, have not presented any authority to the Court to suggest that an "illustrative" exhibit need not comply with the Federal Rules of Evidence. Furthermore, even if this Court were to consider Exhibit 24, it fails to support the Boyces' argument. The Boyces simply list entries from the Certificates and then list entries from the IMF forms, without explaining how the latter show there are mistakes in the former. There is no argument as to how those

numbers impugn the calculations made in the Certificates.

■ The Court further finds that the Boyces' list of purported discrepancies between the Tax Court Judgment and the Certificates cannot be properly considered by the Court. This argument was not presented in their moving papers and therefore should not be considered now, as it is improper for a party to raise a new argument in a reply brief. *See, e.g., United States v. Bohn,* 956 F.2d 208, 209 (9th Cir.1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief); *United States v. Boggi,* 74 F.3d 470, 478 (3d Cir.1996) (noting that considering arguments raised for first time in reply brief deprives opposing party of adequate opportunity to respond); *Playboy Enters., Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court."). Further, as with the purported discrepancies between the IMF and Certificates, the Boyces's simply list the alleged discrepancies without accounting for the fact that the Certificates reflect additional assessments and adjustments so they would conform to the Tax Court's decision.

■ Finally, the most significant infirmity with the Boyces' arguments that the Forms 4340 do not conform to the Tax Court Judgment and IMF's is that the Boyces did not present this argument in response to contention interrogatories the Government propounded following Judge Gonzalez's March 22, 2000, order. As discussed above, Judge Gonzalez denied without prejudice the Government's motion for partial summary judgment on the validity of the Forms 4340. The parties were given additional time to conduct discovery into the Boyces' argument the Certificates are not accurate. Indeed, shortly after Judge Gonzalez's March 22, 2000, order, the Government propounded contention in-

terrogatories requesting the Boyces to support their position that the Forms 4340 are inaccurate. (Darmstadter (6/16/00) Decl. Exh. S.) The Boyces' response to these interrogatories was as follows:

> Objection. This interrogatory calls for a legal conclusion by the Defendants. Further, this inquiry seeks information that is non-discoverable attorney work-product.
>
> Without waiving the objections the Defendants state that the identified Exhibit appears to have been signed by an improper party, and is therefore suspect of authenticity. It is also a summary document allegedly derived from another summary document (Individual Master File), for which the government or its employees have either lost or destroyed most of the original source documents. Summary documents are, by their very nature, incomplete. This lack of completeness makes the validity and accuracy of the said Exhibit difficult, if not impossible, of verification.

(Darmstadter (6/16/00) Decl. Exh. T.) Because the Boyces did not inform the Government in discovery, as requested, their position that the Forms 4340 do not conform with the Tax Court Judgment and IMFs, the Government argues the Court should not consider these arguments under Rules 26(e) and 37.

This Ninth Circuit holds that it is the taxpayer's obligation to present a cognizable argument how the IRS erred in calculating tax deficiencies. *I & O Publ'g,* 131 F.3d at 1317. The Government's contention interrogatories were aimed at learning the basis for the Boyces' arguments that the Forms 4340 incorrectly calculate the Boyces' tax deficiencies. Indeed, Judge Gonzalez's March 22, 2000, order required the parties to contact the Honorable Louisa S. Porter to finalize a schedule for discovery of this issue. The Boyces' argu-

ment that the Government was not entitled to discovery on this issue is meritless. Under Rule 33(c), a party can serve an interrogatory the answer to which involves "an opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(c); *O'Connor v. Boeing North Am., Inc.*, 185 F.R.D. 272, 280–81 (C.D.Cal.1999). The Government's contention interrogatories are not directed to issues of "pure law" that would infringe on the attorney-work product doctrine as codified in Rule 26(b)(3). Rather, they seek the *facts* upon which the Boyces' relied for their defense to the Forms 4340. As such, the contention interrogatories were permissible and the Boyces were required to respond to them. "Moreover, requiring the answer to these contention interrogatories is '[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint....'" *O'Connor*, 185 F.R.D. at 281 (*quoting In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 8 (D.Me.1991)).

The Boyces' further contend that Rule 26(e) does not apply because the central purpose of that rule is to prevent unfair surprise at trial and there is no trial date in this case, and also because they are *currently* supplementing discovery in the motions before the Court. Under Rule 26(e), a party has a "duty seasonably to amend" interrogatory responses "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2). The Boyces have not presented any authority to support their argument that Rule 26(e) allows them to wait until the eve of trial to supplement their discovery responses.

The Boyces' responses to the relevant interrogatories do not explain in any way their contention that the Certificates at issue do not accurately reflect all credits for payments they made on their tax liabilities. As such, these responses are incomplete and evasive. In light of Judge Gonzalez's order directing the parties to plan a schedule for discovery into, *inter alia*, this very issue, and the duty to supplement responses under Rule 26(e)(2), the Court will exercise its inherent authority and decline to review the Boyces' arguments that the Certificates are inconsistent with the IMFs and Tax Court Judgment. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

*4. Whether the Forms 4340 Reflect All Credits.*

As in their opposition to the Government's original motion for summary judgment, the Boyces contend the Government has not properly credited them for all monies received. In its moving papers, the Government argues that the Boyces have not produced any evidence in discovery to show that they made tax payments that are not properly reflected in the Forms 4340. For example, in James Boyce's deposition, he could not identify any particular payments and admitted that he had never performed a proper accounting. (James Boyce Depo. at 16:11–31:15.) Shelley Boyce was also unable to identify a single payment that was made that was not reflected as a credit on the Forms 4340. (Shelley Boyce Depo. at 11:10–16:14.) In addition, the Boyces' interrogatory responses were not able to identify payments or other credits which should be applied to their tax liabilities. (Darmstadter (6/16/00) Decl. Exhs. T, V, W.)

At their deposition, the Boyces presented the Government with several documents they contended reflected payments

on their tax liability. These documents are attached to the Boyces' deposition transcript as Exhibit L. The Boyces did not question Gregory Yarbrough, the Internal Revenue Officer who was assigned to investigate their federal tax delinquencies, on whether the credits reflected in Exhibit L's documents were all accounted for in the Forms 4340.[7] (Yarbrough Depo. 65:3–24.) In support of its motion for summary judgment, the Government has presented a declaration by Yarbrough where he reconciles the payments shown in the documents in Exhibit L with the payments as reflected on their IMF transcripts and Forms 4340.

The Boyces' respond to Yarbrough's declaration by attempting to impugn Yarbrough's credibility, arguing that he has not handled the Boyces' collection file for six, and possibly eight or nine years. They further question his ability to recall the fees the banks charged in 1989 and 1992 for purposes of his declaration when he could not recall during his deposition the dates he had posted notices of jeopardy assessment on the Boyces' house. In addition, the Boyces argue that Yarbrough is speculating in his declaration and that he has not been qualified as an expert witness.

The Court does not find the Boyces' arguments persuasive. As an initial matter, the Boyces have waived any arguments questioning the validity of Yarbrough's reconciliation of the Certificates and IMFs with the documents in Exhibit L by declining to question him on this issue. Further, Yarbrough has been a Revenue Officer since 1984 and was assigned a Taxpayer Delinquency Investigation for the Boyces. (Yarbrough Decl. ¶¶ 1, 2.) Yarbrough's declaration reconciling the amounts reflected in Exhibit L's documents is based on his review of those documents and the IMFs and Forms 4340. (Yarbrough Decl. ¶¶ 8–9.) For example, the bank fees that Yarbrough discusses are listed on the documents the Boyces presented in Exhibit L. (*E.g. compare,* Boyces' Depo. Exh. L at 17 *with* Yarbrough Decl. ¶ 18; Boyces' Depo. Exh. L at 20 *with* Yarbrough Decl. ¶ 19.) Accordingly, Yarbrough is competent to present evidence on this issue. Finally, the Boyces have not presented any evidence showing that Yarbrough's declaration incorrectly reconciles the documents in Exhibit L with the IMFs. Accordingly, the Exhibit L documents fail to present a triable issue of material fact regarding the accuracy of the Certificates.

7. At the end of Yarbrough's deposition, the following exchange took place between Richard Shepard, the Boyces' counsel, and the Government's attorney, Henry Darmstadter:

> MR. SHEPARD: Well, I have completed my questions and I am prepared to go to the stipulation or discuss what we are going to do about—
>
> MR. DARMSTADTER: Before we do that, I want to at least put on the record that I am really shocked that we aren't going through any of the application of any of the payments, which I though was an issue in this case.
>
> MR. SHEPARD: I am not saying it isn't.
>
> MR. DARMSTADTER: But you don't want to—He would be the individual to ask as to allocation of payments, so—
>
> MR. SHEPARD: He can say that when you want to put him on the stand or when you want—I mean, if you want to ask him now, you can ask him.
>
> MR. DARMSTADTER: I realize that. Are there any application of payments that you are confused about at this point in time?
>
> MR. SHEPARD: Well, I am not going to tell you what I am confused on or what I am clear on. I am telling you that I am not asking those questions. If you want to ask them, you can.

(Yarbrough Depo. at 65:3–24.)

■ In connection with these motions, the Boyces have attached as Exhibit 23 nine additional bank statements that purportedly reflect more payments on their tax liabilities. These documents, however, were not provided in discovery. Even though the Boyces did not have these documents when they were deposed, they had a continuing duty to supplement their document production under Rule 26(e)(2). In addition, as discussed above, Judge Gonzalez's March 22, 2000, order contemplated the parties conducting discovery on the Boyces' argument they were not credited all monies received. These documents, therefore, can be precluded from consideration under the Court's inherent authority.

Assuming the documents in Exhibit 23 are properly before the Court, they nevertheless fail to raise a triable issue of material fact regarding the accuracy of the Forms 4340. The Boyces have failed to establish that these documents prove the Forms 4340 do not reflect all credits from their payments. For example, on the second page of Exhibit 23, the top "Memorandum Charge—Checking" reflecting a $17.25 levy on May 13, 1992 is accounted for as a credit on James Boyces' Form 4340 for the tax period ending 12/31/80. (*Compare* Shepard (8/14/00) Decl. Exh. 23 at 2 *with* Darmstadter (12/23/99) Decl. Exh. L at 4.) Further, a review of these documents shows the Boyces have not shown that all of the amounts reflected in the documents in Exhibit 23 are in fact IRS levies. For example, the Boyces have not shown the first three statements reflecting levies on Shelly Boyce's Bank of America account are IRS levies. None of the IRS's Notices of Levy in the Exhibit L to the Boyces' deposition transcript are directed towards Bank of America. (Boyces' Depo. Exh. L.) It is possible that these levies were by the State of California Franchise Tax Board, which also has liens against the Boyces' Sleeping Indian Road property.

### 5. Whether the Boyces Have Been Provided All Relevant Evidence.

The Government states that since Judge Gonzalez's March 22, 2000, order, it has provided the Boyces with extensive discovery. Specifically, the Government argues it has provided copies of the Boyces' IMF transcripts for the years 1979–84, a version of the ADP code book necessary to decipher the IMF transcripts, and certified copies of the Forms 23(C) (Summary Record of Assessments) for the periods at issue. (Darmstadter (6/16/00) Decl. ¶ 2.) In addition, the Government argues that pursuant to Rule 30(b)(6), the Boyces deposed James Maloney, Special Procedure Advisor in the Collection Division of the IRS in San Diego. (Darmstadter (6/16/00) Decl. ¶ 3.) The Boyces received copies of all available documents pertaining to the collection of the subject tax liabilities, including Notices of Levy, copies of checks, and various IRS Payment Posting Vouchers. (Darmstadter (6/16/00) Decl. ¶ 4.) The Boyces also deposed Yarbrough, the principal IRS Revenue Officer involved with the collection on the subject jeopardy assessments. (Darmstadter (6/16/00) Decl. ¶ 5; Yarbrough (6/16/00) Decl. ¶ 2.) Finally, the Government issued subpoenas to the banks where the Boyces indicated they had maintained accounts during the time periods at issue. (Darmstadter (6/16/00) Decl. ¶ 5 and Exh. R attached thereto.)

The Boyces respond that while the Government has provided the Boyces' "administrative file" from the IRS Examination Division, it has failed to provide the "collection file" from the IRS Collection Division. Yarbrough testified at his deposition the collection file was destroyed. (Yarbrough Depo. at 45:24–64:12.) The Boyces argue that this "collection file" would likely have contained important evidence probative of: (a) the total amounts collected by the IRS in general and Yarbrough in par-

ticular; (b) the application of the amounts collected to particular years; and (c) the procedures followed and forms used by Yarbrough in providing notice and executing the 1989 jeopardy assessment and other tax levies against third parties. The Boyces maintain their collection case file should have been kept for 10 years as required by the Internal Revenue Manual. Because their collection file was destroyed, the Boyces argue they are entitled to summary judgment or in the alternative, to have the Certificates stricken from evidence.

The Government contends that Yarbrough's June 16, 2000, declaration shows the Boyces' file was handled in accordance with IRS records control policy, and that it was pursuant to that policy that the Boyces' file was destroyed. (*See* Yarbrough Decl ¶ 7.) The Government states that the Boyces are incorrect when they assert that the Internal Revenue Manual provides that the records are to be maintained for ten years, and that they are also mistaken that the original Collection Case File was destroyed at the request of Yarbrough. The Government further argues the Boyces are incorrect that a Notice of Levy is an evidence of payment. The Government explains that a Notice of Levy is merely a demand for payment, and the party responding to the levy is not obligated to provide payment unless it is in possession of property or rights to property of the taxpayer. *See* IRC § 6332.

 The Court is not persuaded by the Boyces' arguments. First, one Circuit has rejected taxpayers' argument that they entitled to all original documents used by the IRS to prepare a summary record of assessments. *Gentry*, 962 F.2d at 558. In so doing, the Court held that neither the Tax Code nor the Treasury Regulations require that taxpayers be given original documents regarding assessments. *Id.* The Court further found that the IRS

Certificates of Assessments and Payments provided to the taxpayers comported with the Treasury Regulations' requirements. *Id.*

 Second, courts have rejected arguments that taxpayers are released from any tax liabilities because IRS records have been destroyed or are otherwise missing. For example, in *Zolla*, the United States brought an action to reduce to judgment a taxpayer's federal income tax liabilities. Neither the United States nor the taxpayer introduced direct evidence of the taxpayer's income and deductions for the years at issue. *Zolla*, 724 F.2d at 809. Pursuant to routine procedure, the IRS had destroyed all copies of notices of deficiency and demands for payment that had been mailed to the taxpayer. *Id.* at 810. The taxpayer argued the presumption of correctness that attaches to the IRS' determinations of a tax deficiency should not apply because there was insufficient evidence the Government mailed the statutory notices of deficiency. *Id.* at 809–10. The taxpayer did not present any evidence to contradict the Government's evidence of a postal form 3877 certifying that the notices of deficiency had been mailed and an IRS form certifying that the taxes and section 6651(a)(3) failure-to-pay penalties had been assessed. *Id.* at 810. The Ninth Circuit rejected the taxpayer's challenge, and held that the certified transcripts "are highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notice and assessments were properly made." *Id.*

Similarly, in *United States v. Ahrens*, 530 F.2d 781 (8th Cir.1976), the taxpayer argued that the IRS did not comply with established procedures regarding mailing statutory notices of deficiency. *Ahrens*, 530 F.2d at 782. The parties did not have copies of the statutory notices of deficiency as they had been lost. *Id.* The Govern-

ment, however, offered a copy of post office Form 3877 that stated the statutory notices of deficiency had been mailed, as well as a letter from the taxpayer's attorney that corroborated the information in the Form 3877. *Id.* at 784–85. Because the taxpayer had not presented any rebuttal evidence indicating the notices had not been mailed, the Court held that the Government had proved as a matter of law that the notices of deficiency were mailed. *Id.* at 785.

For the reasons discussed above, the Court finds that the Boyces have not presented any admissible or persuasive evidence that undermines the accuracy of the Forms 4340. Accordingly, the Court does not find the destruction of the Boyces' case collection file raises a triable issue of material fact as to the accuracy of the Certificates, entitles the Boyces to summary judgment, or requires that the Certificates be stricken from evidence.

### B. Interest Calculation.

In support of its motion, the Government submitted the declaration of Julie Piazza for purposes of updating the amount of interest owed by the Boyces on the subject tax liabilities to a date certain. In so doing, the Government provided the total balance owed by the Boyces as of July 17, 2000—the original hearing date for this motion—so that, in the event the Court granted the instant motion at the hearing, it could enter a money judgment in sum certain. The Boyces challenge Piazza's calculation that the Boyces owe $600,089.84 in interest—an amount that is nearly three times the underlying tax and penalty assessments combined. The Boyces contend the Government provides no method for determining the accuracy of this interest calculation, and have filed a motion to strike Piazza's declaration or in the alternative, leave to reopen discovery so they can depose Piazza on her declaration.

As pointed out by the Government, the amount of interest owed the Government on underpayment of taxes is provided by the Internal Revenue Code. Accordingly, the amount of interest owed is a matter of law, not of evidence. *Ghandour*, 37 Fed. Cl. at 127. Internal Revenue Code section 6601(a) provides for interest on underpayment of tax, and interest on underpayments accrues from the last date prescribed for payment until paid. IRC § 6601(a); *Ghandour*, 37 Fed. Cl. at 126–27. Internal Revenue Code section 6601(e)(2) entitles the Government to interest on penalties and other additions on tax. IRC § 6601(e)(2); *Ghandour*, 37 Fed. Cl. at 126–27. Because interest on assessments and penalties are mandatory under the Internal Revenue Code, the Court finds that the significance of Piazza's declaration was only to allow the Court to render judgment in a specific dollar amount and does not open the door to discovery on the amount of interest the Boyces owe. *See United States v. Schroeder*, 900 F.2d 1144, 1150 n. 5 (7th Cir.1990) ("The amount [of interest] owed [on an IRC § 6672 penalty] is a matter of law, not of evidence. It is not something the government must prove at trial."); *Ghandour*, 37 Fed. Cl. at 126–27 (noting that Internal Revenue Code provisions regarding interest are mandatory and not a matter of evidence). The Boyces' motion to strike Julie Piazza's declaration is or in the alternative, to reopen discovery is therefore DENIED.

### C. Boyces' Constitutional Argument Against Penalties and Interest.

The Boyces contend the Certificates reflect burdensome, oppressive, and excessive fines and forfeitures upon the Boyces for their exercise of their First Amendment right to petition their Government for redress of grievances. In support, the Boyces explain that they attended several

conferences beginning in 1978 that made them doubt the legitimacy of income tax laws, and they believe that the law of taxation is uncertain. Specifically, the Boyces maintain the Sixteenth Amendment is ambiguous, taxable income cannot be defined by statute, question whether income tax is a direct tax or indirect tax, and question whether income is property. Although these arguments were rejected by the Tax Court, the Boyces present them here to show their constitutional arguments were formed after reasonable inquiry, well grounded in fact, and were good faith attempts for the modification or reversal of existing law related to income taxes. The Boyces believe that the penalties and interest assessed against them is unwarranted punishment, and contrary to the First and Fifth Amendments. In support, they cite *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

In *Cheek*, the Supreme Court outlined two alternatives for an individual who challenges a federal taxing agency: (a) pay the tax the law purported to require, file for a refund and, if denied, present his claims of invalidity, constitutional or otherwise, to the courts; or (b) could have not paid the tax and challenged the tax deficiencies in tax court. *Cheek*, 498 U.S. at 206, 111 S.Ct. 604. The Boyces state that *Cheek* stands for the proposition that if a taxpayer has a frank difference of opinion with the IRS, he can employ one of the two above-listed procedures and not be penalized. Here, the Boyces state they approached the IRS several times seeking answers to their questions regarding income taxes only to have their inquiries rebuffed. Thus, the Boyces contend they should not be penalized under *Cheek*. The Boyces argue that because a person with frank differences regarding his tax liability who decides not to pay must wait for an assessment before filing his petition, he is denied due process of law as to the penal-

ties and interest the IRS imposes in the interim (between the time the tax is owed until adjudication in the tax court). Thus, the Boyces state they have been deprived of due process by these excessive penalties and interests, and are being punished for seeking redress of their grievances.

In a supplemental brief, the Boyces seek further support from a recent Ninth Circuit decision, *White v. Lee*, 227 F.3d 1214 (9th Cir.2000). The Boyces argue that *White* holds that the right to petition for redress of grievances applies even to advocacy of an illegal act not amounting to a breach of peace, and that *Noerr–Pennington* immunity applies in all contexts except labor relations. They further argue that under *White*, the tax penalties assessed against them by the Government unconstitutionally infringe upon their petition and due process rights and therefore should be voided.

■■■ The Court is not persuaded that the Boyces' constitutional challenges mandate that penalties and interest not be assessed against them. *Cheek* and *White* do not support the Boyces' arguments. *Cheek* was a criminal prosecution for tax evasion. There, the Supreme Court held that a taxpayer's mistaken reading of the tax laws may negate willfulness in a tax evasion case, but that a defendant's views bout the validity of tax statutes are irrelevant to the issue of willfulness. *Cheek*, 498 U.S. at 206, 111 S.Ct. 604; *United States v. Bonneau*, 970 F.2d 929, 931 (1st Cir. 1992). Far from providing a "safe harbor" in civil cases such as this one, *Cheek* found that a jury instruction to disregard a defendant's views on the validity of the tax statutes would be proper. *Id.* Further, *White* is inapposite as it was not a case involving unpaid federal taxes. Instead, *White* involved the Fair Housing Act and the First Amendment. *White*, 227 F.3d at 1220. There, neighbors who opposed con-

version of a motel into multi-family housing unit alleged that Housing and Urban Development officials violated their First Amendment rights by investigating the neighbors' activities. *Id.* The Ninth Circuit held that the neighbors' opposition to the conversion was protected by the First Amendment, and the investigation into the neighbors' activities unconstitutionally infringed on their First Amendment rights. *Id.* at 1226–39. The Court recognized that "a person's speech or petitioning activity is not removed from the ambit of First Amendment protection simply because it advocates an unlawful act." *White,* 227 F.3d at 1227. But nothing in the Court's opinion suggests that failure to pay taxes because of disagreements with federal taxation law is protected speech that precludes the imposition of interest and penalties.

The Boyces have not cited any persuasive authority for their position that their due process rights were violated. As *Cheek* noted, an individual who questions the validity of tax laws cannot ignore the duties imposed by the Internal Revenue Code and must utilize the mechanisms provided by Congress to present claims of invalidity. *Cheek,* 498 U.S. at 206, 111 S.Ct. 604. The Boyces have not shown that these mechanisms violate their due process rights under the test announced in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that to determine whether procedural due process has been violated the court looks at the following factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used; and (3) the value of additional procedural safeguards and the cost of those safeguards to the government). Further, "[n]oncompliance with tax laws is not protected by the First Amendment." *Buck v. United States,* 967 F.2d 1060, 1062 (5th Cir.1992); *see United States v. Lee,* 455 U.S. 252, 260, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (stating that the maintenance of a functional federal tax system is a sufficiently important governmental interest to justify incidental regulation of First Amendment rights). Accordingly, the Court does not find that the Boyces' rights to due process and to petition the Government for redress of grievances is infringed by the assessment of penalties and interest against them.

### D. Summary.

Having reviewed the parties' briefs, applicable law, and the evidence, the Court finds that the Boyces have not presented any admissible or persuasive evidence that raises a factual question regarding their tax liabilities as established in the Certificates of Assessments and Payments (IRS Forms 4340) dated October, 1999. Accordingly, the Boyces' motion to strike Exhibits K–P from Darmstadter's declaration is **DENIED.** The Government's motion for partial summary judgment as to its first and second causes of action is **GRANTED,** and the Boyces' motion for partial summary judgment is **DENIED.**

### IV. Boyce's Quiet Title Motion.

In conjunction with their summary judgment motion, the Boyces have moved for an order quieting title. For the reasons discussed above, the Boyces' have been denied leave to file a quiet title claim, and the Court has found that such a claim is meritless. Accordingly, the Boyces' motion for quiet title is **DENIED.**

### V. Government's Motion for Default Judgment and Judgment Pursuant to Stipulation.

#### A. Trust and Northern Plains Service.

The Government has filed a motion for default judgment against the Trust and Northern Plains Service. Specifically, the

Government has requested that this Court find that: (1) the Government has valid tax liens against all the property belonging to the Boyces, including the Property; and (2) the Trust and Northern Plains Service are sham entities controlled by the Boyces, or alternatively, the Boyces' alter egos, nominees, or agents for the Boyces. On this basis, the Government requests the Court enter an order that all property held by those entities, including any interest in the Property, is subject to federal tax liens against the Boyces.

■ To obtain default judgment under Rule 55, a plaintiff must first request entry of default from the Clerk of the Court and then apply for default judgment. *See* Fed. R.Civ.P. 55(a)-(b). A plaintiff does not receive default judgment as a matter of right; rather, a court has discretion as to whether it should be granted. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988); *Rashidi v. Albright*, 818 F.Supp. 1354, 1356 (D.Nev. 1993); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2685 at 30–31 (1998). A court may consider several factors in exercising its discretion to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).

In this case, the Clerk of the Court entered default against the Trust and Northern Plains Service on July 6, 1999. These Defendants have not responded to this motion for default judgment. Their failure to respond is a basis for entering default judgment against them on the Complaint's third cause of action. Under Civil Local Rule 7.1(f)(3)(c), if an opposing party fails to file the papers as required under the local rules, that failure may constitute a consent to the granting of a motion. Civ. L.R. 7.1(f)(3)(c).

■ Moreover, a consideration of the merits of this motion warrants entry of default judgment. The IRS may levy upon all types of property that belong to the taxpayer but are nominally held in the name of another entity or individual and that the federal tax lien provided under IRC § 6321 protects the government's interest in such property. *Don Gastineau Equity Trust v. United States*, 687 F.Supp. 1422, 1426 (C.D.Cal.1987). Generally, the alter ego doctrine is used when an party seeks to hold an individual liable for a business entity's debts. *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1390 (9th Cir.1993). A "reverse piercing" theory is available where the United States seeks to recover a taxpayer's delinquent tax liability from his alter ego business entity. *Id.* The Court applies the law of the forum state in determining whether a corporation is an alter ego of the taxpayer. *Wolfe v. United States*, 806 F.2d 1410, 1411(9th Cir.1986), *amending* 798 F.2d 1241, 1244 n. 3 (9th Cir.1986). In California, a party relying on the alter ego doctrine must show: (1) that there is such unity of interest and ownership that the legal separateness of the individual and alter ego no longer exist and (2) that the observance of the fiction of separate existence would under the circumstance promote fraud or injustice. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (2000); *Hennessey's Tavern, Inc. v. American Air Filter Co.*, 204 Cal.App.3d 1351, 1358, 251 Cal.Rptr. 859 (1988). In this case, these factors weigh in favor of finding Northern Plains Service and the Trust alter egos of

the Boyces. The evidence before the Court indicates that these entities were created at the Boyces' direction for holding and managing their property. Second, the inequity prong is also met because recognition of these entities would allow individuals to evade payment of taxes by simply setting up a trust or other entity to "hold" and "manage" property that the individuals are using and receiving benefit from. Accordingly, the Government's motion for default judgment against the Trust and Northern Plains Service that they are the alter egos or nominees of the Boyces is **GRANTED. IT IS HEREBY ORDERED** that all property held by the Trust and Northern Plains Service, including any interest in the Property is subject to federal tax liens against the Boyces.

**B. White Rail.**

The Government requests the Court enter judgment against White Rail in accordance with the stipulation for entry of judgment approved by the Court. White Rail has not opposed this request and, given that it would effect the intent of the parties' stipulation, the Government's motion is **GRANTED.**

### CONCLUSION

For the foregoing reasons, having carefully considered the parties' briefs, the record, argument of counsel, applicable law, and good cause appearing, **IT IS HEREBY ORDERED:**

1. The Boyces' motion to amend their answer is **DENIED** [Docket Nos. 126, 127].

2. The Government's renewed motion for partial summary judgment against Defendants James Boyce and Shelley Boyce as to the Government's first and second causes of action is **GRANTED** [Docket No. 89].

a. The Clerk of the Court is directed to enter judgment against Defendant James M. Boyce, Jr., a.k.a. James Boyce in the amount of: $290,761.96, plus interest as provided by the Internal Revenue Code.

b. The Clerk of the Court is directed to enter judgment against Defendant Shelley A. Boyce in the amount of: $227,249.98, plus interest as provided by the Internal Revenue Code.

3. The Government's motion for default judgment against Defendants Jacob Family Preservation Trust, a.k.a. Jacob Family Trust and Northern Plains Service is **GRANTED**, those entities are the alter egos or nominees of the Boyces and therefore all property held by them, including the Sleeping Indian Road Property is subject to the tax liens against the Boyces [Docket No. 94]. The Clerk of the Court is directed to enter judgment against Defendants Jacob Family Preservation Trust, a.k.a. Jacob Family Trust and Northern Plains Service.

4. The Government's motion for judgment pursuant to stipulation against Defendant White Rail Company is **GRANTED** [Docket No. 94]. The Clerk of the Court is directed to enter judgment against Defendant White Rail Company.

5. The Boyces' motion for summary judgment and quiet title is **DENIED** [Docket No. 110].

6. The Boyces' motion to strike exhibits K–P of Darmstadter's declaration is **DENIED** [Docket No. 113].

7. The Boyces' motion to strike Julie Piazza's declaration or in the alternative, to reopen discovery is **DENIED** [Docket No. 112].

8. The Boyces' *ex parte* motion to file the Second Declaration of James M. Boyce and Shelley A. Boyce *nunc pro tunc* to September 18, 2000, is **GRANTED** [Docket No. 145].

9. The pretrial conference currently scheduled for **March 19, 2001 at 11:00 a.m.,** shall proceed as to the two remaining parties in this case, Plaintiff United States of America and Defendant State of California.

IT IS SO ORDERED.

## ORDER AMENDING AND CERTIFYING FEBRUARY 15, 2001 ORDER UNDER FRCP 54(b); ORDER RE: DEFENDANTS' MOTION TO STAY OR FIX BOND

[Docket No. 160]

This matter came on regularly for a hearing on Defendants James M. Boyces, Jr., a.k.a. James M. Boyce and Shelley A. Boyce's (collectively referred to as "the Boyces") Motion for Order Staying Order and Judgment Pending Appeal and/or Fixing Amount of Supersedeas Bond. Henry C. Darmstadter, of the U.S. Department of Justice Tax Division appeared for Plaintiff United States, and Richard Shepard of the Shepard Law Offices appeared for the Boyces.

## DISCUSSION

### I. Certification under Federal Rule of Civil Procedure 54(b).

As an initial matter, the Court notes that the Government has requested this Court certify pursuant to Federal Rule of Civil Procedure 54(b),[1] the February 15, 2001, order granting the Government's motion for partial summary judgment and motion for entry of judgment on the third cause of action. In that order, the Court directed the Clerk of the Court to enter judgment in favor of the Government and against the Boyces, Defendant White Rail Company, and Defendants Jacob Family Preservation Trust, a.k.a. Jacob Family Trust and Northern Plains Service. The Court did not at that time make a certification under Rule 54(b).

Rule 54(b) authorizes courts to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties." Fed.R.Civ.P. 54(b). Rule 54(b) requires that the Court make an express determination that there is "no just reason for delay" in entering judgment. Fed. R.Civ.P. 54(b). Partial judgments under Rule 54(b) are reserved for unusual cases where "the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket" are outweighed by the pressing need for an early and separate judgment. *Morrison–Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981); 3 William W. Schwarzer, *California Practice Guide: Federal Civil Procedure Before Trial,* § 14:379 at 14–80 (The Rutter Group 2001). Partial judgment under Rule 54(b) is proper where there are distinct and several claims and immediate review of the portions ruled upon will not result in later duplicative proceedings in the trial or appellate court. *White Mountain Apache Tribe v. Hodel,* 784 F.2d 921, 923–24 (9th Cir.1986); *Morrison–Knudsen,* 655 F.2d at 965. "A similarity of legal or factual issues will weigh heavily against entry of judgment ... and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result." *Morrison–Knudsen,* 655 F.2d at 965.

The Court finds that Rule 54(b) certification is proper because the Court's February 15, 2001, order disposed of all the claims and parties with the exception of the claim against the State of California. The claims adjudicated between the Government on the one hand and the Boyces, White Rail, Jacob Family Preservation Trust, and Northern Plains Service on the other, concern these Defendants' tax liabilities and the amounts of those liabilities. In contrast, the remaining claim is sepa-

1. All future citations to "Rule" refer to the Federal Rules of Civil Procedure.

rate and distinct as it pertains to the relative tax lien priorities of the state and federal governments. Accordingly, certification of the Court's February 15, 2001, order under Rule 54(b) is warranted as there is no just reason for delay.

## II. Boyces' Motion to Stay.

The Boyces request this Court stay execution of the judgment and waive the bond requirement under Federal Rule of Civil Procedure 62(d). Generally, enforcement of a final judgment is not stayed during the pendency of an appeal. Fed.R.Civ.P. 62(a). Rule 62(d), however, allows for a stay of the execution of the judgment pending appeal when the moving party posts a supersedeas bond. Fed.R.Civ.P. 62(d). A supersedeas bond ensures that the appellee will be able to collect the judgment (plus interest) should the court of appeals affirm the judgment. *See Rachel v. Banana Republic*, 831 F.2d 1503, 1505 n. 1 (9th Cir.1987). Filing the bond allows the stay as a matter of right. Fed. R.Civ.P. 62(d). The court may waive the bond requirement on several grounds: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial position that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir.1988) (internal citations and quotations omitted). The Court can also approve the posting of alternate security. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir.1990); *see, e.g., International Telemeter, Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir.1985) (allowing appellant to place money in escrow account as an alternative form of judgment guarantee); *Olympia Leasing Equip. Co. v. Western Union Tel. Co.*, 786 F.2d 794, 797–98 (7th Cir.1986) (affirming district court's decision allowing the appellant to pledge cash and accounts receivable and a grant of security interest in lieu of supersedeas bond); 1 Dorothy W. Nelson *et al., Federal Ninth Circuit Civil Appellate Practice* § 1:169 at 1–30 (The Rutter Group 2000).

The only argument the Boyces have presented in support of their motion to stay enforcement of the judgment is that they do not have sufficient funds to pay the judgment. They further request that the Court consider the subject property, located at 577 Sleeping Indian Road in Oceanside, California, as sufficient security to protect the judgment creditor's interest. Having reviewed the Boyces' briefs, considered argument of counsel, and the record in this case, the Court finds the Boyces have not articulated sufficient grounds to stay execution pending appeal without posting a bond or other form of security. In light of the record in this case, the Court declines to waive the bond requirement. The Sleeping Indian Road property, however, may constitute an appropriate alternate form of security. But at this time the Court does not have sufficient information upon which to make such a finding. Accordingly, the Court reserves ruling on this issue until the Government has had an opportunity to review the appraisal of the property the Boyces presented at the hearing as well as the property's title, and any other information necessary to determining whether it would be willing to accept the subject property as alternate security.

### CONCLUSION

After carefully reviewing the parties' briefs, the record, argument of counsel,

applicable law, and good cause appearing, **IT IS HEREBY ORDERED:**

1. The Court's February 15, 2001, order [docket no. 149] is amended to reflect it is certified under Federal Rule of Civil Procedure 54(b) as this Court finds there is no just cause for delay.

2. The Boyces' request to waive the bond requirement is **DENIED.**

3. The Boyces shall submit to the Government a proposal for posting the Sleeping Indian Road property as security for the judgment.

4. A hearing on whether the Sleeping Indian Road property can serve as an alternative form of security shall be held on **May 21, 2001** at **10:30 a.m.** Should the Court find that the property is not an appropriate alternative form of security, at that time it will set the amount of bond necessary to stay execution of the judgment.

5. Any disputes regarding judgment debtor discovery must be directed to the Honorable Louisa S. Porter.

**IT IS SO ORDERED.**